67 N.J. Super. 121 (1961)
170 A.2d 249
WILLIAM J. METZDORF, INDIVIDUALLY AND ADMINISTRATOR, ETC., PLAINTIFF-RESPONDENT,
v.
BOROUGH OF RUMSON, A MUNICIPALITY OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT, AND ARTHUR ERICSON, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 1961.
Decided April 27, 1961.
*123 Before Judges CONFORD, FREUND and KILKENNY.
Mr. William R. Blair, Jr. argued the cause for appellant (Messrs. Parsons, Canzona, Blair & Smith, attorneys).
Mr. Patrick J. McGann, Jr. argued the cause for respondents (Messrs. Reussille, Cornwell, Mausner & Carotenuto, attorneys; Mr. McGann, of counsel and on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Charles Metzdorf died on January 1, 1957, owning a tract of property situate in the Borough of Rumson, and measuring about 1,000 feet in depth and about 100 feet in width. The property fronts on River Road and runs to the North Shrewsbury River. By paragraph Tenth of his will, Metzdorf devised, by metes and bounds, the northerly half of the tract to defendants Arthur and Brita Ericson and their daughter, Barbara; the southerly portion passed, under a residuary clause, subject to minor specific bequests and costs of administration, to plaintiff William J. Metzdorf. Located on the southerly portion of the tract are a two-story dwelling, a garage containing living quarters, a garage without living quarters, and a tool shed; on the northerly portion is a boat house, which contains living quarters.
The issue herein is whether these devises are, as the borough avers, null and void, because the lots created thereby violate Rumson's existing zoning laws prescribing minimum frontage and lot dimensions and prohibiting the use of accessory buildings for residential purposes other than the housing of domestic servants or employees of the principal building. Neither of the parcels carved out by the testator *124 conforms with the ordinance requirement of 200 ft. minimum lot frontage and 1 1/2 acres minimum area in an R-1 zone (in which the subject property is concededly located).
Plaintiff, both individually and as administrator of Charles' estate, brought this action in the Chancery Division against the borough and the Ericsons for declaratory and injunctive relief. The complaint set forth that plaintiff had found it necessary, due to the estate's inability to meet all of its expenses, to sell the residuary portion of the land; that he had executed a contract for sale of the property to one Richard P. Egan; and that he was unable to fulfill the contract because of the continuous threat of the borough, through its attorney, "to prosecute any and all persons" residing on the testator's original tract, "if and when the so-called boat house property and the two-story cottage structure were occupied simultaneously." Plaintiff asked for a declaration as to the right of occupancy of the northerly and southerly portions and for a permanent injunction against the borough from prosecuting the owners for simultaneous occupancy of the aforementioned two structures; in the alternative, if the property were held not to be separable for residence purposes, he requested an order that it be sold in its entirety and the parties' respective interests in the proceeds adjudicated.
Defendant Ericson filed an answer and also cross-claimed against the borough, demanding in the latter pleading substantially the same relief as had plaintiff. The borough's answer reaffirmed the applicability of the ordinance in all respects, clarifying the municipality's position by the annexation of a letter which had been sent to all interested parties prior to the institution of the litigation. The letter notified the parties that "any subdivision of the tract formerly occupied by the aforesaid decedent is in violation of the provisions of `The Revised Building Zone Ordinance of the Borough of Rumson' and * * * any use and occupancy of said tract as two separate lots or as lots under different ownership is also in violation of said Ordinance."
*125 By stipulation of counsel at the time of trial it was agreed that the sole issues to be determined therein were (1) whether Charles Metzdorf's will effectively conveyed title to the premises to the respective parties; and (2) if so, whether plaintiff and the Ericsons might occupy their respective parcels without violating the zoning ordinance. The complaint and cross-claim were supplemented to conform them to these issues.
The Chancery Division judge held that the public policy favoring the unfettered right to dispose of one's property was of paramount importance. The judge accordingly ruled that the zoning ordinance did not create an intestacy, and that the division of the property by will "in violation of the zoning ordinance" was valid. He added, however, that "the devisees take subject to the zoning ordinance." Judgment was entered granting plaintiff and cross-claimants only so much of their requested relief as was declarative of ownership. The borough alone brings this appeal.
The position of the borough, essentially, is that the testator's division of the premises, establishing two separate tracts whose size and usage violate the municipal zoning ordinance, is opposed to public policy and therefore must fail entirely as a testamentary disposition. Plaintiff and cross-claimants concede that their use of the property is subject to the municipal zoning laws, but maintain that their respective proprietary interests in the premises, as created by the testator's devise, are not affected by laws relating to the socially beneficial utilization of realty.
Both parties rely upon the definition section of the 1953 Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq. They note that the act, N.J.S.A. 40:55-1.2, as well as the Land Subdivision Ordinance of the borough, adopted June 10, 1954, defines "subdivision" to mean:
"the division of a lot, tract, or parcel of land into two or more lots, sites or other divisions of land for the purpose, whether immediate or future, of sale or building development; except that the following divisions shall not be considered subdivisions within *126 the meaning of this act; provided, however, that no new streets or roads are involved: divisions of land for agricultural purposes where the resulting parcels are three acres or larger in size, divisions of property by testamentary or intestate provisions, or divisions of property upon court order." (The latter emphasis added)
The landowners construe the statute and corollary ordinance as plainly indicative of a legislative intent to insulate testamentary dispositions from municipal land use regulation insofar as such regulation attempts to control the quantum of a property owner's interest. The borough, on the other hand, considers the absence of similar protective language in both the state enabling zoning legislation, N.J.S.A. 40:55-30 et seq., and the municipal zoning ordinance as a significant sign that the zoning power was intended to prevail over the right to dispose of property at death. Particular reliance is placed upon the language of Justice Heher in Collins v. Board of Adjustment of Margate City, 3 N.J. 200, 206 (1949), to the effect that
"* * * the proprietary rights of the landowner here are subject to the exercise of the police power comprehended in R.S. 40:55-30 and 40:55-32; and the right of alienation and subdivision of the lands for sale or use are ex necessitate conditioned by those provisions."
We fail to perceive the conflict in social policy envisaged by the borough in a holding for the landowners herein. The power to dispose of one's property by testament, while neither an inherent privilege nor one constitutionally secured, is a long recognized and legislatively protected function, see 1 Page, Wills (Bowe-Parker Rev., 1960), § 3.1, pp. 62-67, having its roots in the "sacred and inviolable right" of "absolute dominion" of every man over his own property, Turner v. Cheesman, 15 N.J. Eq. 243, 257 (Prerog. 1857), subject only to compliance with law and non-interference with public policy. Girard Trust Co. v. Schmitz, 129 N.J. Eq. 444, 453 (Ch. 1941). Planning and zoning, on the other hand, affirmatively encouraged by our 1947 Constitution, Art. IV, Sec. VI, par. 2, and by the *127 aforementioned legislative enactments, are designed to control and direct the physical development of the community and its environs in order to promote both immediate and ultimate social and economic well-being. Angermeier v. Borough of Sea Girt, 27 N.J. 298, 308 (1958); Mansfield & Swett, Inc. v. Town of West Orange, 120 N.J.L. 145 (Sup. Ct. 1938); Levin v. Livingston Township, 62 N.J. Super. 395, 400 (Law Div. 1960).
Thus, while our laws relating to testamentary disposition are focused primarily on devolution of title in accordance with the design of the decedent, our zoning and planning regulations relate predominantly to the use to which the realty may be subjected. True, insofar as the beneficial utilization of land necessitates that it be divided into workable areas compatible with an over-all scheme of development, our planning act indirectly limits piecemeal alienation of property by prohibiting the sale or transfer, without official approval or referral, of any part of a "subdivision." N.J.S.A. 40:55-1.24. By virtue of this provision, the inter vivos division of a tract such as was held by the testator herein could be enjoined or set aside by the borough, under its planning power, in addition to the levy of a fine on the transferor. Cf. Goldstein v. Lincoln Park Planning Board, 52 N.J. Super. 44 (App. Div. 1958); City of Newark v. Padula, 26 N.J. Super. 251 (App. Div. 1953). As heretofore mentioned, however, testamentary transfers of title, where no new streets or roads are involved, are not subject to municipal sanction, because of their exclusion from the "subdivision" definition. N.J.S.A. 40:55-1.2. The reasonableness of the legislative decision to permit, almost absolutely, testamentary subdivision, while carefully regulating inter vivos parcel-splitting, is not here at issue. The strong policy favoring effectuation of a testator's intention and the realization that a forced partial intestacy is surely at odds with that intention, as well as the recognition that the incidence of testamentary subdividing is not of serious proportions, unconcerned as is the average testator with the *128 usual "profit motive" associated with land division  these and other reasons may underlie the legislative distinction.
In any event, the borough's contentions are bottomed not on its planning power but on its zoning authority. While zoning and planning legislation are cognate and complementary, Phillips v. Westfield Bd. of Adjustment, 44 N.J. Super. 491, 500 (App. Div. 1957), certification denied 24 N.J. 465 (1957), the two concepts are not entirely duplicative. Unlike the planning power which, as we have seen, is  in its pursuit of orderly and comprehensive area development  somewhat restrictive of transferability, the zoning function is directed in immediate fashion towards activities upon the property. In addition to controlling the use to which land is subjected, zoning ordinances regulate the size, shape and placement of buildings, and size, shape and usable percentage of lots  in order to achieve the immediate ends of control over population density, adequate daylighting of buildings, and sufficient open space for rest and recreation. San-Lan Builders, Inc. v. Baxendale, 28 N.J. 148, 158 (1958). The zoning power, in its proper exercise, is not operative upon the alienability of land, whatever the size of the parcel transferred, but is concerned solely with the manner in which its owner seeks to utilize it.
It is thus evident that the Rumson zoning ordinance can in no way interfere with the effectuation of the testator's intentions in transferring title to his property. The trial judge was therefore correct in holding the testamentary parcel division to be valid. No appeal has been taken from his determination that the devisees assume title subject to the zoning ordinance (with the usual legal recourse of application for variances, exceptions, etc.), and it is reasonably clear that that determination is unassailable as a statement of law.
The result reached herein is not only consistent with but is underscored by the reasoning in Collins v. Board of Adjustment of Margate City, supra. The statement therein that the right of alienation and subdivision of lands is *129 conditioned by that phase of the police power finding expression in our zoning laws must be read in the context of the issues confronting the court. Involved in the Collins case was a zoning provision comparable to Rumson's, in that it forbade the use of accessory buildings for residence purposes (other than by domestic servants). The rear portion of an established lot, containing an accessory building, had been conveyed inter vivos to plaintiff Collins, who attempted to lease it for residence purposes and was charged by the municipality with violation of the ordinance. The court sustained the regulation and its applicability to plaintiff, concluding that "the partition of the lot by the cited conveyance" could not vitiate the effect of the ordinance; and further, that "it is fundamental that conveyances of land are conditioned by all regulations made in the reasonable exercise of the zoning authority." 3 N.J., at p. 207, supra. Implicit in the court's determination was a recognition that the subdividing conveyance was itself effective and not susceptible to challenge, and that the holding against use of the divided lot in violation of the ordinance would, as a practical matter, accomplish the salutary purpose of discouraging future similar subdivisions.
To recapitulate, the scope of the municipal zoning authority must be measured in the light of both traditional conceptions of the zoning function and allied legislative enactments. The Planning Act, through its regulation of subdivisions, provides the sole governmental restraint on transferability in this area; testamentary dispositions are expressly excluded from its sweep, thus evincing a policy determination not to interfere with such transfers except as specified. Not only is there no contrary specification in our enabling zoning legislation, but the language of the zoning statute, N.J.S.A. 40:55-30, and the decisions thereunder, manifestly demonstrate that the power to regulate land use does not embrace the authority to impinge upon the transfer of title thereto.
Affirmed.