964 A.2d 807

JANICE A. EGELAND, PLAINTIFF–APPELLANT, v. ZONING
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF
COLTS NECK, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued January 7, 2009—Decided February 20, 2009.

Before Judges STERN, WAUGH and NEWMAN.

*Marc A. Leckstein* argued the cause for appellant (*Leckstein & Leckstein, LLC,* attorneys; *Mr. Leckstein,* on the briefs).

*Michael B. Steib* argued the cause for respondent.

The opinion of the court was delivered by

WAUGH, J.S.C. (temporarily assigned).

This appeal raises the issue of whether a division of real property by testamentary devise is a "self-created hardship" for the purposes of an application for an undue hardship variance pursuant to *N.J.S.A.* 40:55D–70(c). The overall appeal is moot

because of the withdrawal of the entity that had intended to purchase the property and build the specific home for which the variances at issue were sought. Nevertheless, we conclude that the question of whether there was a "self-created hardship" is a justiciable issue because the trial court's determination on that issue would be binding as between the property owner and the defendant zoning board in the event of a future variance application. We affirm that portion of the decision on appeal that held that the hardship was self-created and dismiss the remainder of the appeal as moot.

I

Plaintiff Janice A. Egeland is the record owner of a 1.65 acre tract of vacant land in the Township of Colts Neck (Township), which is officially designated as Block 38, Lot 15.01 on the Township's tax map. The lot was part of a larger property, Block 38, Lot 15, originally purchased by Egeland's parents in 1971 and owned solely by her mother following her father's death. The lot at issue was created by a testamentary devise from Egeland's mother, whose will was written in 1994 and admitted to probate in March 2004. At the same time, the remainder of the original lot was left jointly to Egeland and her sister. They subsequently sold that lot to a third party for construction of a single family residence.

The original lot met the zoning requirements for construction of a single family residence in the Township's A–1 Agricultural Residential Zone District. However, at the time the governing will was written, it was not large enough to subdivide into two buildable lots in the A–1 zone. The division effectuated by the mother's will created one buildable lot and the lot at issue here, which would require variances for construction of a residence.

In 2006, Egeland entered into a contract to sell the property to Forefront Homes at Colts Neck (Forefront). The contract of sale was conditioned upon Forefront's ability to obtain the necessary approvals for the construction of a single family dwelling on the

lot. In August 2006, Forefront filed an application with defendant Zoning Board of Adjustment of the Township of Colts Neck (Board), seeking to construct a single family dwelling with: (1) a lot area of 68,161 square feet, although 88,000 square feet are required; (2) a lot frontage of zero feet, although 300 feet are required; (3) a lot width of 159 feet, although 300 feet are required; and (4) no frontage on an improved street.

After holding hearings in late 2006, the Board denied the application by resolution dated January 17, 2007, largely on the basis of its conclusion that there was a self-created hardship. Forefront chose not to pursue the matter further and terminated its interest in the lot.

On February 26, 2007, Egeland filed an action in lieu of prerogative writs to challenge the Board's determination. The matter was tried on November 14, 2007. Judge Lawrence M. Lawson issued a written opinion on February 25, 2008, affirming the Board's determination, including its decision to view the testamentary division as a self-created hardship. He entered an order dismissing the complaint on March 11, 2008. This appeal followed.

## II

We start with the standard of review. Our role in reviewing zoning decisions is ordinarily limited because "a Board of Adjustment's exercise of its discretionary authority based on its factual determinations will not be overturned unless arbitrary, capricious or unreasonable." *Wilson v. Brick Twp. Zoning Bd. of Adjustment,* 405 *N.J.Super.* 189, 197, 963 A.2d 1208 (App.Div. 2009) (citing *Wyzykowski v. Rizas,* 132 *N.J.* 509, 518–520, 626 A.2d 406 (1993)). However, "legal determinations are not entitled to a presumption of validity and are subject to de novo review." *Ibid.*

*N.J.S.A.* 40:55D–70(c)(1) provides for what is frequently referred to as a hardship variance:

Where: (a) by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or (b) by reason of exceptional topographic conditions or physical features uniquely affecting a specific piece of property, or (c) by reason of an

extraordinary and exceptional situation uniquely affecting a specific piece of property or the structures lawfully existing thereon, the strict application of any regulation pursuant to [*N.J.S.A.* 40:55D–62 to –68.6] would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon, the developer of such property, [the zoning board shall have the power to] grant, upon an application or an appeal relating to such property, a variance from such strict application of such regulation so as to relieve such difficulties or hardship. . . .

The Supreme Court noted in *Jock v. Zoning Board of Adjustment of Township of Wall,* 184 *N.J.* 562, 590, 878 *A.*2d 785 (2005), that "[u]ndue hardship refers solely to the particular physical condition of the property, not personal hardship to its owner, financial or otherwise."

*Jock* holds that the "availability of a hardship variance depends on how the hardship was created." *Ibid.* A "self-created hardship requires an affirmative action by the landowner or a predecessor in title that brings an otherwise conforming property into non-conformity," so that, "[w]here the hardship has been created by the applicant, or a predecessor in title, relief will normally be denied." *Id.* at 591, 878 *A.*2d 785. There is no requirement that the current owner have been involved in the creation of the hardship. If a prior owner created the hardship and is not entitled to a hardship variance, the "impediment would pass to a buyer, even one who had no hand in creating the hardship." *Id.* at 590, 878 *A.*2d 785. The same would be true of a testamentary devisee.

The gist of Egeland's argument is that, as a matter of public policy, a testamentary division cannot be viewed as a self-created hardship because it is a legally permissible method of dividing land. While we agree that a testamentary devise is a legitimate method of dividing land, it does not necessarily follow that the resulting lots are to be treated as if they had been created by an approved subdivision under the Municipal Land Use Law (MLUL), *N.J.S.A.* 40:55D–1 to –163.

Egeland relies on *N.J.S.A.* 40:55D–7 for the proposition that testamentary divisions of land "are exempt from being subject to the requirements of zoning regulations." In actuality, that section

is definitional and provides that "divisions of land by testamentary or intestate provisions" are "not considered subdivisions within the meaning of [the MLUL], if no new streets are created." *N.J.S.A.* 40:55D–7. Consequently, such a division, while permitted, is not the same as a municipally approved subdivision of property, which the same section defines as "the division of a lot, tract or parcel of land into two or more lots, tracts, parcels or other divisions of land *for sale or development." Ibid.* (emphasis added).

In *Metzdorf v. Borough of Rumson,* 67 *N.J.Super.* 121, 170 *A.*2d 249 (App.Div.1961), we were called upon to determine whether a property owner's traditional ability to dispose of property by testamentary means was limited by the local zoning law's requirements with respect to issues such as the size, shape, and placement of buildings, and size, shape, and usable percentage of lots. We noted that "while our laws relating to testamentary disposition are focused primarily on devolution of *title* in accordance with the design of the decedent, our zoning and planning regulations relate predominantly to the *use* to which the realty may be subjected." *Id.* at 127, 170 *A.*2d 249 (emphasis in original).

We held that, while the MLUL did not prevent the testamentary disposition of property, it nevertheless governs the use made of the property by those who receive it. "The zoning power, in its proper exercise, is not operative upon the alienability of land, whatever the size of the parcel transferred, but is concerned solely with the manner in which its owner seeks to utilize it." *Id.* at 128, 170 *A.*2d 249. Consequently, contrary to Egeland's assertion, there is no public policy inconsistency in applying local zoning and planning requirements to land that has been divided by testamentary devise.

Egeland also argues that there must be an element of "illegal[ity]" or an "adroitly purposeful act" by the landowner or a predecessor in title to warrant an application of the concept of a self-created hardship. Again, we disagree.

Despite Egeland's contention to the contrary, there is nothing in the Supreme Court's opinion in *Jock* to support the assertion that

there must have been some sort of misconduct or bad motive on the part of the person creating the non-conforming lot. Although cases cited in *Jock* do involve such conduct, it is not specifically stated as a requirement for a self-created hardship in *Jock* itself. The rule in *Jock* is simply that "an affirmative action by the landowner or a predecessor in title that brings an otherwise conforming property into non-conformity" constitutes a self-created hardship. *Id.* at 591, 878 *A*.2d 785.

Here, Egeland's mother owned a piece of property—a single lot—that was conforming, but could not have been subdivided into two conforming lots at the time she made her will or on the date of her death. Although she was legally permitted to devise it to her children as two lots, one buildable and one non-conforming, her action, as Egeland's predecessor in title, was the "affirmative action" that brought an "otherwise conforming property into non-conformity." [1] Consequently, it is a self-created hardship.

### III

For the reasons set forth above, we conclude that both the Board and Judge Lawson correctly held that the hardship with respect to Egeland's lot was self-created for the purposes of considering an application for a variance under *N.J.S.A.* 40:55D–70(c)(1). Consequently, we affirm as to that issue. Because the land use application made by Forefront is otherwise moot, we dismiss the remainder of the appeal.

Affirmed in part, dismissed in part.

---

[1] In *Jock*, the Supreme Court held that, in considering an application for a hardship variance, one consideration is whether the applicant could have taken steps to bring the non-conforming lot into conformity by purchasing additional property. *Id.* at 594, 878 *A*.2d 785. Because Egeland was a joint owner of the other half of the original property with her sister, she was, consequently, in a position to rejoin the two lots to create a single fully conforming lot.