1997 ME 227

**COMMERCIAL UNION INSURANCE COMPANY**

v.

**WORKERS' COMPENSATION BOARD.**

Supreme Judicial Court of Maine.

Argued Oct. 8, 1997.

Decided Dec. 5, 1997.

David C. King (orally), Barbara A. Cardone, Rudman & Winchell, Bangor, for plaintiff.

Julia A. Finn (orally), General Counsel, Workers' Compensation Board, Augusta, for defendant.

Wayne M. Whitney (orally), McTeague, Higbee, MacAdam, Case, Watson & Cohen, Topsham, for party-in-interest Lynn Thiel.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, DANA, and LIPEZ, JJ.

DANA, Justice.

[¶ 1] Commercial Union Insurance Company appeals from a decision of the Superior Court (Penobscot County, *Kravchuk, J.*) affirming a decision of the Workers' Compensation Board penalizing the insurer $2,500 for violations of the Worker's Compensation Act in obtaining an employee's medical records. 39–A M.R.S.A. § 360(2) (Supp.1997). Commercial Union contends that, because the Board's decision has a collateral estoppel effect in an action pending in the Superior Court, the Board's denial of its motion to stay the Board proceedings constituted an infringement of its right to a jury trial pursuant to article I, section 20 of the Maine Constitution. Commercial Union also contends that the Board's findings of intentional misrepresentation and a willful violation of the Act were not supported by substantial evidence. We disagree with both contentions and affirm the decision of the Board.

[¶ 2] Examining the evidence in the light most favorable to the Board, the record reveals that Lynn Thiel suffered a work-related injury to her right foot while employed by Hibbard Nursing Home. Hibbard's insurer, Commercial Union, sent Thiel a medical release form requesting a release of "any and all" of Thiel's medical records from Mayo Regional Hospital. Thiel contacted Commercial Union by telephone, objected to the scope of the release, and stated that she would only agree to release medical information pertinent to her foot injury. Commercial Union instructed Thiel to discard the first form and that another more limited release would be sent to her. Thereafter, Thiel received two releases from Commercial Union. One of the forms was a more restrictive version of the release that she had already seen, now limited to medical records pertinent to her work injury. The second form was titled "Statement of Injured." Although much of this latter form dealt specifically with the work injury, the final paragraph, read in isolation, suggested an unlimited release of medical information. Thiel was instructed to sign this form "so that [Commercial Union] may give early consideration to [her] case." Thiel signed both release forms.

[¶ 3] During an informal conference two years later representatives of Commercial Union made statements leading Thiel to believe that Commercial Union had obtained records from the hospital that did not relate to her work injury. Thiel obtained a copy of the "Statement of Injured" form from Mayo Regional Hospital and discovered that it had been altered so that all but the last paragraph, containing the broadly written release, had been removed. An insurance adjuster confirmed that both forms, including the altered form, were in Commercial Union's file and that at least one of the forms had been sent to Mayo.

[¶ 4] In 1993 Thiel filed a complaint in the Superior Court against Commercial Union alleging an intentional and a negligent infliction of emotional distress and an invasion of privacy. In 1994 Thiel also filed a complaint with the Workers' Compensation Abuse Unit alleging improper conduct in obtaining the release. Commercial Union filed a motion with the Board seeking a stay of the Abuse Unit proceeding until the court litigation was resolved. Commercial Union's argument before the Board in support of its motion addressed issues of res judicata, collateral estoppel, judicial economy and fairness. The Board denied the motion, stating:

> I don't think that my ruling in this case would have the effect of res judicata on that forum; and I don't think that they would be collaterally estopped from proceeding with their case. I think this is a separate proceeding and I don't think the Superior Court justice would take this proceeding into effect in regard to that particular case.

[¶ 5] The Board granted Thiel's complaint and ordered Commercial Union to pay a $2,500 penalty to the General Fund, finding three violations of 39–A M.R.S.A. § 360(2): (1) the intentional misrepresentation to Thiel of the purpose and nature of the "Statement

of Insured" release form; (2) the intentional misrepresentation to Mayo Hospital of the scope of Thiel's consent to release medical information; and (3) the willful use of an unauthorized,[1] intentionally altered, release form to obtain medical information from Mayo Hospital. Commercial Union filed a petition for judicial review of final agency action pursuant to 39–A M.R.S.A. § 360(3) (Supp.1997).[2] The Superior Court (Penobscot County, *Kravchuk, J.*) denied the petition and this appeal followed.

■ [¶ 6] Commercial Union contends that because it was entitled to a jury trial in the pending civil action, and because the Abuse Unit case involved the same or similar issues of fact, the Board's denial of its motion to stay violated its right to a jury trial pursuant to article I, section 20 of the Maine Constitution. As the Superior Court observed, however, Commercial Union did not raise this issue before the Board. We have held that constitutional issues are not preserved for appeal unless they are raised at the proceeding below, and that this rule applies to appeals from administrative agencies. *New England Whitewater Ctr. v. Department of Inland Fisheries & Wildlife*, 550 A.2d 56, 60 (Me.1988). The fact that the Board may have been incorrect in its legal conclusion regarding the collateral estoppel effect of a Board decision, *see Van Houten v. Harco Constr., Inc.*, 655 A.2d 331, 333 (Me.1995) (collateral estoppel must be accorded to administrative proceedings), does not excuse the insurer from raising the jury trial issue before the Board. The rule in the administrative setting is based on " 'simple fairness to those who are engaged in the tasks of administration, and to litigants,' " *New England Whitewater*, 550 A.2d at 60 (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed.

54 (1952)), and the principle that " 'the agency and not the appellate court should have the first opportunity to rule on the objectionable practices,' " *Hale v. Petit*, 438 A.2d 226, 232 (Me.1981) (quoting *Mechanic Falls Water Co. v. Public Utilities Comm'n*, 381 A.2d 1080, 1105 (Me.1977)). We have no way of knowing how the Board would have decided Commercial Union's motion had the Board been alerted to the possibility that a constitutional right might be infringed by the denial of a stay. Based on the arguments presented to the Board, we conclude that it did not abuse its discretion in denying Commercial Union's motion for a stay.

■ [¶ 7] Commercial Union next contends that the Board's findings of intentional misrepresentation and a willful violation of the Act are "[u]nsupported by substantial evidence on the whole record" and are "[a]rbitrary or capricious or characterized by abuse of discretion." 5 M.R.S.A. §§ 11007(4)(C)(5) & (6) (1989). We disagree. Section 360(2) provides that "[t]he board may assess, after hearing, a civil penalty ... for any willful violation of this Act, fraud or intentional misrepresentation." 39–A M.R.S.A. § 360(2). The Board's finding that Commercial Union intentionally misrepresented the nature of the release to Thiel is supported by evidence that: Commercial Union informed Thiel that it would send a limited release; the release sent was not so limited; and the release was misrepresented as being necessary only to expedite the handling of the claim. There is also substantial evidence to support a finding that Commercial Union intentionally misrepresented to Mayo Hospital the scope of Thiel's release, including evidence that: it used an unauthorized form; it then altered that form; and the presence of the altered form in both Mayo Hospital's and Commercial Union's

---

1. Former section 52–A required employees to release medical information "which relates to any injury or disease for which compensation is claimed" when requested by the employer "in a form prescribed by the Commission." 39 M.R.S.A. § 52–A (1989), *repealed and replaced by* P.L.1992, ch. 885, §§ A–7, A–8, *codified at* 39–A M.R.S.A. § 208 (Supp.1997).

2. Section 360(3) expressly authorizes appeals to the Superior Court from penalty decisions:

3. *Appeal.* Imposition of a penalty under this section is deemed to be final agency action subject to appeal to the Superior Court, as provided in Title 5, chapter 375, subchapter VII [5 M.R.S.A. § 11001, et seq.]. Notwithstanding Title 5, section 11004, execution of a penalty under this section is stayed during the pendency of any appeal under this subsection. 39–A M.R.S.A. § 360(3) (Supp.1997).

files. The Board's finding of a willful violation of the Act is supported by evidence that Commercial Union used an unauthorized, altered medical release form to obtain medical information while intentionally misrepresenting the scope of that release to Thiel and Mayo Hospital. Commercial Union contends, however, that, absent some evidence that it actually received records not pertinent to the work injury, there is no basis for finding a violation of the Act. We disagree. Commercial Union's violations of section 360(2) were complete when it sought the release of information by intentional misrepresentation or used an altered, unauthorized release form in willful violation of the Act. We therefore conclude that the Board acted within its discretion in ordering the penalty.

The entry is:

Decision of the Workers' Compensation Board affirmed.