2000 ME 69

**ESTATE OF Mary F. FOOTER.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 25, 2000.
Decided April 20, 2000.

David J. Van Baars, Shankman & Associates, Brunswick, for appellant.

Edward A. Brown, Brunswick, for appellee.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Linnco, Inc. appeals from a judgment entered in the Cumberland County Probate Court (*W. Childs, J.*) denying its claims that (1) it possessed a valid lien on the late Mary Footer's mobile home and (2) rent accruing after Footer's death was a cost or expense of her estate's administration. We affirm in part and vacate in part.

1. One of these statutes reads:

   § 3451. Rent due on leased land

## I. FACTS

[¶ 2] Mary Footer died intestate on November 26, 1997. In November 1998, Brackett Funeral Home petitioned for appointment as the successor personal representative of Footer's estate, and thereafter served as such. Footer's estate contained only one item of value: her mobile home situated in a Brunswick mobile home park. In March 1999, the mobile home sold for $16,300. Linnco arranged this sale at Brackett Funeral Home's urging.

[¶ 3] On the date of Footer's death, the mobile home was situated on Linnco's property, the Linnhaven Mobile Home Park. Footer had rented space in the park since 1987. The rent was paid in full as of the date of her death. Following Footer's death, her mobile home remained at the Linnhaven park. A prior personal representative of the estate paid for some rent and snow plowing costs.

[¶ 4] Brackett Funeral Home filed a petition for complete settlement of Footer's estate. Linnco opposed that petition because under Brackett's proposed distribution Linnco would have received just over 40% of the total amount it believed it was owed. Linnco petitioned to resolve the disputed claim. The Probate Court granted Linnco's disputed claim in part, finding that Linnco was owed $240 for winterization and plowing as a cost of estate administration. In all other respects, the court denied Linnco's claim and otherwise ordered the complete settlement of the estate. Linnco then filed this appeal.

## II. LINNCO'S PURPORTED LIEN ON THE ESTATE'S MOBILE HOME

[¶ 5] Linnco relies on a pair of statutes, *see* 10 M.R.S.A. §§ 3451, 3452 (1997),[1] to assert that it holds a land rent

When a lease of land with a rent payable is made for the purpose of erecting a mill or other buildings thereon, such buildings and

lien on the estate's mobile home. The Probate Court held that Linnco did not have a land rent lien because it failed to properly perfect such a lien. Because statutory construction is a matter of law, we review decisions regarding the meaning of a statute de novo. *See Estate of Jacobs*, 1998 ME 233, ¶ 4, 719 A.2d 523, 524.

[¶ 6] The statutory land rent lien has been a part of Maine law, in one form or another, since 1823.[2] We have considered the land rent lien, now codified in sections 3451 and 3452, only once before. *See Union Water–Power Co. v. Chabot*, 93 Me. 339, 45 A. 30 (1899). In *Union Water–Power*, we construed the land rent lien statutes broadly to attach a continuing lien on the building at the time it is erected on the land and made that lien enforceable against the building "whenever land rent becomes due and payable." *Union Water–Power*, 93 Me. at 344, 45 A. at 31.

[¶ 7] The Probate Court, however, erred by applying the land rent lien statutes because a different statute which specifi-

cally applies to mobile homes situated in mobile home parks occupies the field and prohibits the type of land rent lien sought by Linnco. *See* 10 M.R.S.A. § 9097–A (1997).[3] Section 9097–A(2)(C) applies to leases that attempt to create a lien by operation of a rental agreement between a mobile home owner and a mobile park operator. *See id.* The statute specifically declares lease provisions which seek to require "the tenant to give a lien upon the tenant's property, including a tenant's mobile home, for the amount of any rent or other sums due the park owner or operator" to be an unfair trade practice and unenforceable. *Id.*

[¶ 8] When statutes appear to contradict, we seek to harmonize those statutes if possible. *See Koch Refining Co. v. State Tax Assessor*, 1999 ME 35, ¶ 6, 724 A.2d 1251, 1253. Sometimes, statutes diverge to such an extent that harmonization is impossible. "It is unrealistic to assume that whenever the legislature passes a

---

all the interest of the lessee are subject to a lien and liable to be attached for the rent due. Such attachment, made within 6 months after the rent becomes due, is effectual against any transfer of the property by the lessee.

10 M.R.S.A. § 3451 (1997). The other referenced statute reads:

**§ 3452. Land rent**

In all cases where land rent accrues and remains unpaid, whether under a lease or otherwise, all buildings upon the premises while the rent accrues are subject to a lien and to attachment for the rent due, as provided in section 3451, although other persons than the lessee may own the whole or a part thereof, and whether or not the land was leased for the purpose of erecting such buildings. If any person except the lessee is interested in said buildings, the proceedings shall be substantially in the forms directed for enforcing liens against vessels, with such additional notice to supposed or unknown owners as any justice of the court having jurisdiction of the proceedings orders, or the attachment and levy of execution shall not be valid except against the lessee.

10 M.R.S.A. § 3452 (1997).

2. *See* R.S. ch. 91, §§ 36, 37 (1883); R.S. ch. 91, § 18 (1857). The old section 36 is identi-

cal to the current section 3451. The old section 37 mirrors the current section 3452 in all pertinent ways.

3. The pertinent portion of the statute reads:

**§ 9097–A. Unfair rental contracts**

**2. Unenforceable provisions.** The following rental agreement or rule provisions are specifically declared to be unenforceable and in violation of Title 5, section 207:

**A.** Any provision that absolves the park owner or operator from liability for the negligence of the park owner or operator or the agent of the park owner or operator;

**B.** Any provision that requires the tenant to pay the legal fees of the park owner or operator in enforcing the rental agreement;

**C.** Any provision that requires the tenant to give a lien upon the tenant's property, including a tenant's mobile home, for the amount of any rent or other sums due the park owner or operator; and

**D.** Any provision that requires the tenant to acknowledge that the provisions of the rental agreement, including tenant rules, are fair and reasonable.

10 M.R.S.A. § 9097–A (1997).

statute it has in mind all prior acts relating to the same subject matter." 2B SUTHER-LAND, STATUTORY CONSTRUCTION § 51.01, at 118 (1992 & Supp.1998). When statutes cannot be harmonized, "a statute dealing with a subject specifically prevails over another statute dealing with the same subject generally." *Butler v. Killoran,* 1998 ME 147, ¶ 11, 714 A.2d 129, 133 (citing 2B SUTHERLAND, *supra,* § 51.05, at 174).

[¶ 9] While section 9097–A applies only to leases that try to establish liens and sections 3451 and 3452 create statutory liens independent of any contract, it defies common sense to suggest, as Linnco does, that the Legislature intended a statutory lien that cannot be created pursuant to a lease. If it is an unfair trade practice to attempt to create a lien by lease, it certainly follows that a statutory lien creating the same result is also inappropriate.[4] Linnco should not receive the benefit of a statutory lien that it could not enforce had it been a provision of part of a lease. The Legislature cannot have intended such an illogical result. Section 9097–A(2)(C) controls here as the specific statute, and we hold that the statutory land rent lien does not apply to mobile homes situated in mobile home parks.

## III. COSTS AND EXPENSES OF ESTATE ADMINISTRATION

■ [¶ 10] Construction of the Maine Probate Code concerns a question of law. When reviewing the legal determinations of the probate courts, we construe the statutory language and application de novo. *See Estate of Whittier,* 681 A.2d 1, 2 (Me.1996). "When interpreting a statute we first look at the plain meaning of the statutory language seeking to give effect to the legislative intent." *Id.* (citing *Fullerton v. Knox County Comm'rs,* 672 A.2d 592, 594 (Me.1996)). If, however, the Pro-

bate Court makes a finding of fact, we must review it only for clear error. *See Estate of Plummer,* 666 A.2d 116, 118 (Me. 1995).

■ [¶ 11] Brackett Funeral Home does not contest that the estate owes Linnco rent for the land upon which the estate's mobile home was situated; the issue is whether Linnco's claim for that rent receives priority over other creditors of Footer's estate. If the rent due is one of the "costs and expenses of administration" of Footer's estate, *see* 18–A M.R.S.A. § 3–805(a)(1) (1998), then Linnco's claim would receive priority over other claims against the estate. Conversely, if the rent is considered a debt of the estate, Linnco will be paid proportionally with other creditors following full payment of the costs of the administration of the estate. *See* 18–A M.R.S.A. § 3–805 (1998); *In re Donnell,* 114 Me. 324, 96 A. 230 (1915).

[¶ 12] One discussion of probate rules distinguishes between the debts of an estate and the cost of paying those debts:

> The phrase "costs and expenses of administration" refers to the incidental expenses of paying debts—not the amount of the debts themselves, to the incidental expenses of putting into the hands of the heirs and legatees their portion of the estate—not the amount of the sums thus delivered.

*In re Bamberger's Estate,* 111 Utah 301, 177 P.2d 909, 911 (1947). We have previously accepted as a matter of law the *Bamberger's Estate* definition of costs and expenses of administration. *See In re Estate of Staples,* 672 A.2d 99, 101 (Me.1996). Our Probate Code provides that a personal representative takes possession of the decedent's property and shall manage, protect, and preserve the estate in his or her

---

**4.** The legislative history underlying section 9097–A suggests that the Legislature sought to extend to mobile home owners who rent land in a mobile home park the tenant protections already guaranteed to apartment dwellers. *See* L.D. 1205, Statement of Fact (115th Legis.1991). Other legislative documents also show the Legislature's desire to protect mobile home owners in the same way that apartment renters are protected. *See* Manufactured Housing Commission, Final Report to the 114th Legislature 1–2 (Dec.1989).

possession. *See* 18–A M.R.S.A. § 3–709 (1998). In order to maintain and preserve Footer's estate, the personal representative needed to protect the only asset of the estate, the mobile home. To preserve the value of the mobile home, the price of which declines precipitously when it is moved from a mobile home park, the estate had to maintain the unit at its location and therefore the estate became liable for rent. Contrary to the Probate Court's conclusion, this rent obligation was a cost to be borne by the personal representative in the course of administering the estate. *See Johnson v. Martin*, 567 A.2d 1299, 1303 (D.C.1989) (directing that residuary estate pay the cost to maintain decedent's property until that property is allotted). Rent was an expense of protecting the estate's sole asset and enabling the personal representative to preserve the value of the asset. *See Bamberger's Estate*, 177 P.2d at 911.

The entry is:

Judgment affirmed in part and vacated in part. Remanded to the Cumberland County Probate Court for further proceedings consistent with the opinion herein.