2002 ME 154

**ESTATE OF Steven P. HODGKINS.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Jan. 28, 2002.
Decided: Sept. 24, 2002.

Patrick E. Joyce, Joyce, David & Hanstein, P.A., Farmington, for appellant.

Thomas S. Carey, Thomas W. Merrill, Carey & Associates, Rumford, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Bryant Hodgkins appeals from a judgment of the Oxford County Probate Court (*Hanley, J.*) that the will of the deceased testator, Steven Hodgkins, granted a life estate to Pricilla Sargent and that Hodgkins's actions interfered with that life estate, and awarded Sargent damages against Hodgkins for that interference.[1] Hodgkins challenges (1) the Probate Court's interpretation of the will, (2) the jurisdiction of the Probate Court to award damages to Sargent for Hodgkins's interference with that life estate, and (3) the court's determination of those damages that compensate Sargent for the full value of the life estate without giving Hodgkins the option of surrendering the premises to her. Sargent cross-appeals on the amount of damages awarded to her. On the basis advanced by Hodgkins, we affirm the court's construction of the will, its jurisdiction to render a judgment on Sargent's claim for wrongful interference, and its finding that Hodgkins interfered with Sargent's life estate. We vacate the damages award, however, and remand for further proceedings.

[¶ 2] Sargent lived with the testator in the testator's home for fifteen years prior to his death. The testator's will disposed of the house and surrounding property as follows:

To my brother BRYANT I. HODGKINS (D.O.B. 7/20/37) I leave a certain parcel of land as described in a certain deed from Wendall N. Lyons to Steven Hodgkins, land located in Oxford County, State of Maine, and bounded and described as follows: [description of property]. Also included should be the house and out buildings on said land.... *It is my expressed wish that Pricilla Ann Sargent have the right to live in the above-described house as long as she wishes.*

(Emphasis added.)

[¶ 3] After the testator's death, Hodgkins and Sargent had some conflicts about their respective rights and responsibilities in relation to the property. Sargent remained in the house after the testator died. The Probate Court found that Hodgkins frequently entered the house without permission, looked through Sargent's mail and other personal property, and ultimately made it intolerable for her to live in the house. Sargent claims that Hodgkins's conduct forced her to move out of the house.

[¶ 4] Sargent filed a complaint against Hodgkins in the Probate Court. First, she alleged that Hodgkins exerted undue influence on the testator to persuade him to execute a new will that was less favorable to Sargent than a prior will.[2] Alternatively, Sargent sought a declaratory judgment that the new will granted her a life estate in the property without restrictions. As part of the same complaint, she sought damages from Hodgkins for wrongful interference with her life estate.

---

1. The testator was Steven P. Hodgkins, brother of Bryant Hodgkins. Throughout this opinion "Hodgkins" will refer to Bryant. Steven will be referred to as "Steven," "the deceased." or "the testator," as the context demands.

2. The original will left the house to Sargent in fee simple. The court decided this issue in favor of Hodgkins, and Sargent has not challenged that decision.

[¶ 5] The court agreed with Sargent that the clause providing that it was the testator's "wish that Pricilla Ann Sargent have the right to live in the above-described house as long as she wishes" granted to Sargent a life estate in the house. Further, the court found that Hodgkins had inappropriately interfered with Sargent's enjoyment of the life estate by invading her privacy and interfering with her use of the property. The court was persuaded that Sargent had been forced to move out of the house by Hodgkins's tortious conduct, and that she was entitled to damages as a result.

[¶ 6] As damages, the court awarded Sargent the full value of the life estate. Title 18–A M.R.S.A. § 2–207 (1998) provides a formula for valuing a life estate for purposes of determining a spouse's elective share. The court did not suggest that section 2–207 applied directly, but borrowed the formula in that section to aid in determining the value of the life estate. The court determined that the total value of the property was $80,600, and awarded to Sargent as damages for interference with her life estate $40,300, half the total value of the property. Hodgkins appealed, and Sargent filed a cross-appeal.

I.

[¶ 7] Hodgkins contends that the will did not grant Sargent a *simple* life estate in the property, but rather created a "determinable life estate" that terminated when she moved from the property, regardless of the reason for her moving.[3] Sargent contends that the will created a life estate, and that Maine has not recognized a determinable life estate.

[¶ 8] In construing a will, a court must give effect to the testator's intent, as expressed by the language of the will. 18–A M.R.S.A. § 2–603 (1998). The proper interpretation of unambiguous language in a will is a question of law that we review de novo. *Lord v. Society for the Preservation of New England Antiquities, Inc.*, 639 A.2d 623, 624 (Me.1994).

[¶ 9] "Conditions subsequent as the basis of forfeiture are not favored in law," and we are reluctant to interpret a clause in a will as creating a condition subsequent that subjects an estate to termination "unless the terms of the grant will admit of no other reasonable interpretation." *See Whicher v. Abbott*, 449 A.2d 353, 356 (Me.1982). When a devise is unclear about whether the testator intended to impose a condition on a gift, we will interpret the provision as not imposing such a condition. *See Lord*, 639 A.2d at 626 ("It does not seem overly harsh to require the drafter to use clear and unequivocal language when the testator wants to attach a condition to a gift, the breach of which will result in a forfeiture.").

[¶ 10] We affirm the determination of the Probate Court that the testator did not create a determinable life estate. The statement that Sargent was to "have the right to live in the above-described house as long as she wishes" is not "clear and unequivocal" language providing that Sargent's interest will be subject to forfeiture should she leave the premises, and we will not construe the devise as imposing such a condition. *See id.* Because we conclude that the will does not create a determinable life estate, we need not decide wheth-

---

3. Hodgkins does not challenge the court's determination that the will created a life estate in Sargent. He argues only that Sargent's life estate is subject to a condition subsequent.

*See Maietta v. Winsor*, 1998 ME 84, ¶ 10, 710 A.2d 238, 240 (words expressing "desire" or "wish" are merely precatory).

er such an estate would be recognized under Maine law.

## II.

■ [¶ 11] Hodgkins also contends that the Probate Court's jurisdiction in this case was limited to construing the will and ordering the grant of a life estate to Sargent. He argues that once the court "granted the life estate," Sargent was required to proceed in the Superior Court to pursue her claim for tortious interference with her property.[4]

[¶ 12] Title 4 M.R.S.A. § 251 establishes the jurisdiction of the probate courts, and provides, in pertinent part:

Each judge may take the probate of wills and grant letters testamentary or of administration on the estates of all deceased persons who, at the time of their death, where inhabitants or residents of his county or who, not being residents of the State, died leaving estate to be administered in his county, or whose estate is afterwards found therein; and has jurisdiction of all matters relating to the settlement of such estates
. . . .

4 M.R.S.A. § 251 (1989)

■ [¶ 13] Hodgkins contends that the tort claims were not "relat[ed] to the settlement" of the estate because the settlement of the estate was completed when the court determined that the will devised a life estate to Sargent. Once that issue was determined, he argues, Sargent had a regular tort claim against him, and where, when, or how she had acquired the property did not matter for purposes of jurisdiction. Thus, Hodgkins claims that the Probate Court had no jurisdiction over the tort of interference with a life estate.[5] We disagree.

■ [¶ 14] Hodgkins's interpretation would narrowly limit the jurisdiction of the Probate Court to questions that involve determinations of rights under wills or intestacy laws. This construction is more limited than the language of the statute suggests. The Probate Court's jurisdiction covers all matters *relating to* the settlement of the estate. Sargent's action for construction of the will and her claim of interference with a life estate created by that will involve a common core of facts closely related to each other. Sargent's claim for wrongful interference of her life estate was dependent on the Probate Court's determination that she indeed did possess a life estate, demonstrating that the wrongful interference claim was "relat[ed] to the settlement of" the testator's estate. Because the interpretation of the will was necessary to the settlement of the estate, and the tort claim was directly related to and derivative of the interpretation of the will, the Probate Court's jurisdiction included the tort claim. While Hodgkins is correct that Sargent's tort claim could have been pursued in the Superior or the District Court, this does not mean that the Probate Court does not have concurrent jurisdiction. *See Plimpton v. Gerrard,* 668 A.2d 882, 887 (Me. 1995) ("The very concept of concurrent

---

4. Although Hodgkins failed to raise the jurisdictional argument in the Probate Court, a challenge to the jurisdiction of the court to decide a particular claim may be raised at any point in the proceedings. *See Estate of Shapiro,* 1999 ME 25, ¶ 10, 723 A.2d 886, 888.

5. Hodgkins also contends for the first time on appeal that he was entitled to a jury trial. While the lack of jurisdiction is an issue that can be raised for the first time on appeal, the right to a jury trial has to be properly claimed in the proceeding below in order for it to be asserted on appeal. *See Commercial Union Ins. Co. v. Workers' Comp. Bd.,* 1997 ME 227, ¶ 6, 704 A.2d 358, 360.

jurisdiction is inconsistent with a preference for one jurisdiction over another.").[6]

## III.

[¶ 15] Hodgkins further challenges the damage award of the court, contending that it was inappropriate for the Probate Court to award monetary damages to Sargent for the full value of her life estate. Hodgkins claims that he moved into the house after Sargent moved out because he reasonably believed that the life estate terminated after Sargent vacated the premises. Even if his conduct is considered wrongful, however, Hodgkins contends that he should not be required to pay Sargent the total value of the life estate; rather he contends that the proper remedy would be for the court to order him to vacate the property, and to compensate Sargent for the actual interference with the use of her life estate for the time she was unable to use the property. We agree with Hodgkins and vacate the damages award.

■ [¶ 16] Sargent's claim is for a wrongful interference by Hodgkins with the enjoyment of her life estate. Her damages must be limited to her loss resulting from the tortious conduct, i.e., for full loss of use during the time when Sargent was unable to use the premises, and compensation for any associated damages reasonably flowing from Hodgkins's actions (e.g., moving expenses, etc.). By awarding her the value of the *entire* life estate as damages, the Probate Court awarded Sargent damages for conduct that has not yet occurred (the continued wrongful occupation of the premises by Hodgkins), and which should not continue now that there has been a determination that Hodgkins's occupation of the premises is wrongful. Sargent should be awarded damages, to be assessed on remand, only for those injuries that result from Hodgkins's tortious conduct up until the point that his actions no longer interfere with Sargent's use and enjoyment of the life estate.[7]

The entry is:

Judgment affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion.

---

6. Pursuant to M.R. Prob. P. 71A, Hodgkins could have removed the claim of Sargent for interference with her life estate to the Superior Court. Such a right of removal is consistent with the jurisdiction of the Probate Court being broader than Hodgkins contends.

7. We do not address Sargent's contention that the Probate Court erred in the value it placed on the life estate.