2006 ME 125

**Estate of Edwin L. COLBURN.**

Supreme Judicial Court of Maine.

Argued: May 8, 2006.
Decided: Nov. 2, 2006.

Joseph M. Pickering, Esq. (orally), Largay Law Offices, P.A., Bangor, for appellant.

Edward C. Russell, Esq. (orally), Russell, Silver & Silverstein, P.A., Bangor, for appellee.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER JJ.

CLIFFORD, J.

[¶ 1] Edwin W. Colburn appeals from an order entered in the Penobscot County Probate Court (*Woodcock, J.*), denying his motion for approval of an accounting regarding the estate of his father, Edwin L. Colburn (the decedent). The order followed a petition filed by the personal representative of the estate, Carolyn C. Eaton, for an order of complete settlement of the estate. Edwin contends, inter alia, that the court erred in: (1) denying his motion for further factual findings; (2) finding that he violated 18–A M.R.S. § 3–712 (2005), and ordering him to repay $96,407.43 to the Bangor Furniture Company, Inc. (the corporation); (3) denying his and his wife's, Faith A. Colburn's, claims against the corporation for unpaid compensation, and his claims for principal and interest due on purported shareholder loans; and (4) awarding attorney fees to Eaton and denying them as to himself. We affirm in part and vacate in part.

## I. BACKGROUND

[¶ 2] Edwin L. Colburn died testate on July 12, 1998, survived by his wife, Leola Colburn, and their two children, Edwin W. and Eaton. The decedent's will was admitted to probate on April 26, 1999, and Edwin and Eaton were appointed co-personal representatives on May 12, 1999.[1]

[¶ 3] The decedent's only substantial asset upon his death was his majority share-

---

1. Leola declined to serve as personal representative, and also renounced any interest in the decedent's will.

holder interest in the corporation, of which he owned fifty of eighty outstanding shares.[2] Prior to his death, the corporation's only sizeable asset was the proceeds from the recent sale of its building in Bangor. Edwin had sold the building on behalf of the corporation for $200,000 in cash, and six shares in the company that purchased the building.[3] The value of those shares was $50,000. After closing costs, the corporation obtained net cash proceeds of approximately $178,000.

[¶ 4] From the proceeds of the sale, Edwin paid, or directed the payment of over $96,000 to himself and his wife, Faith. Faith received a check for $22,861.28 (the pre-death payment), purportedly for repayment of a loan in the amount of $18,792, plus interest, given by her to the corporation to pay its property taxes. After making a payment of attorney fees owed by the corporation, the remaining proceeds totaling approximately $150,000 were placed in a corporate trust account under Edwin's sole control.

[¶ 5] After the decedent's death, but before he was appointed co-personal representative, Edwin received a $69,292 payment from the corporation (the pre-appointment payment), which he asserts was for the repayment of shareholder loans given by him to the corporation between 1992 and 1998. Further, after Edwin's appointment as co-personal representative, he and Faith received a $4254.43 payment (the post-appointment payment), which they assert was a repayment of miscellaneous business expenses and unpaid compensation owed to them. The post-appointment payment completely depleted the corporate trust account.

[¶ 6] In February of 2003, Eaton petitioned for an order of complete settlement of the estate, and later filed a petition to have Edwin removed as co-personal representative. Edwin filed with the court an inventory of the decedent's personal property, and an accounting of the estate and the corporation. The inventory included $22,000 in promissory notes owed to the decedent,[4] and the decedent's majority shareholder interest in the corporation, which had an inventory valued at $0. The inventory cross-referenced the corporation's accounting for further explanation of the valuation. The decedent's accounting listed the promissory notes as his only asset of value, totaling $22,000. The corporation's accounting omitted the pre-death payment, but included the pre-appointment and post-appointment payments. It also included as a liability against the corporation two claims totaling $97,000 in unpaid compensation owed to Edwin and Faith. It listed the net value of the estate's majority shareholder interest as negative $48,299.37. Edwin later resigned as co-personal representative.

[¶ 7] The court conducted a hearing in June of 2005. Testimony revealed that, in 1989, the corporation was no longer profitable, and had stopped selling furniture. Eaton had worked at the corporation for only a few years but she never ran the business. Because their relationship was strained, Eaton and Edwin never discussed the estate assets after they were appointed co-personal representatives. Instead, estate affairs on Eaton's behalf

---

2. The remaining shares in the corporation were owned by Edwin.

3. These shares declined substantially in value, however, and were worth only $23,646 in 2002.

4. The $22,000 of promissory notes included a $10,000 note from the decedent's granddaughter and her husband. The court found that this note had been forgiven, and sufficient record evidence supports this finding.

were handled by her attorney. Edwin and Faith testified that, between 1992 and 1998, they gave loans of $69,292 to the corporation; that the corporation also owed them approximately $97,000 in unpaid compensation; and that the decedent had promised that they would be repaid. Edwin also testified that following a shareholder meeting in 1995, the corporation issued a resolution to repay all shareholder loans with interest.

[¶ 8] Following the hearing, the court requested that the parties submit proposed findings of fact and conclusions of law. By order dated August 5, 2005, the court denied Edwin's proposed accounting and inventory based on its conclusion that they contained numerous unproved claims, inaccuracies, and omissions. The order incorporated most of Eaton's proposed findings of fact and conclusions of law, with the exception of two paragraphs regarding the forgiveness of the granddaughter's promissory note, and an award of attorney fees to Eaton. The court found that the majority of the payments made to Edwin and Faith were made either after the death of the decedent, or after Edwin's appointment as co-personal representative. It found that Edwin had violated 18–A M.R.S. § 3–712, and ordered that he repay $96,407.43 to the corporation.[5] The court also denied Edwin and Faith's claims for unpaid compensation owed to them by the corporation, as well as Edwin's request for principal and interest due on his loans to the corporation. The court awarded attorney fees only to Eaton, finding that a denial of attorney fees to Edwin was proper because his actions did not benefit the estate.

[¶ 9] Pursuant to M.R. Prob. P. 52, 59, and M.R. Civ. P. 52, 59, Edwin moved to amend the court's judgment, and for further findings of fact and conclusions of law. His motion included a request that the court make findings as to the specific dates on which the pre-death, pre-appointment, and post-appointment payments occurred. The court denied the motion. This appeal by Edwin followed.

## II. DISCUSSION

### A. Edwin's Motion for Further Findings of Fact

[¶ 10] Edwin first contends that the court erred in denying his motion for further findings of fact. He argues that because many of the court's findings track Eaton's proposed findings, the court failed to make its own independent factual determinations. He asserts that the court should have made findings as to the dates on which the pre-death, pre-appointment, and post-appointment payments occurred. Eaton contends that the court's findings are sufficient and are supported by the evidence, and points out that the dates on which these payments occurred are undisputed and clearly ascertainable by simply referring to various exhibits found in the record.

[¶ 11] "We review the denial of motions for findings of fact and to amend or alter the judgment for an abuse of discretion." *Ten Voters v. City of Biddeford*, 2003 ME 59, ¶ 11, 822 A.2d 1196, 1201. Further, we have noted that "a trial court's verbatim adoption of findings or orders proposed by one party in a case is disfavored, as such an approach suggests that the court has not carefully reviewed

5. Section 3–712 provides in relevant part: "If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty to the same extent as a trustee of an express trust." 18–A M.R.S. § 3–712 (2005).

the evidence or applied its independent judgment in making its findings and conclusions." *Jarvis v. Jarvis*, 2003 ME 53, ¶ 14, 832 A.2d 775, 778. We will not automatically find error when a court engages in this practice, however. "[A] key question on review, when draft orders are adopted without change or with little material change, will be whether the findings and order reflect the application of judgment by the court and not simply one of the parties." *Id.* ¶ 15, 832 A.2d at 779. Although the Probate Court did adopt most of Eaton's proposed findings without change, it did add additional findings regarding the forgiveness of the granddaughter's promissory note and an award of attorney fees. Viewed in their entirety, we are persuaded that the findings reflect the independent judgment of the court.

[¶ 12] Moreover, the dates of the payments made to Edwin and to Faith are readily apparent from the record: (1) the pre-death payment to Faith Colburn was made on July 1, 1998; (2) the pre-appointment payment to Edwin was made on September 14, 1998; and (3) the post-appointment payment to Edwin and Faith occurred on May 28, 1999. Accordingly, the court did not act beyond its discretion in denying Edwin's motion. *See Ten Voters*, 2003 ME 59, ¶ 11, 822 A.2d at 1201.

B. Whether 18–A M.R.S. § 3–712 Authorizes the Court to Order Colburn to Repay $96,407.43 to the Corporation

[¶ 13] Edwin next contends that the court erred when it ordered him to repay

the corporation $96,407.43. Because the pre-death payment was made before the decedent's death, and the pre-appointment payment occurred before Edwin's appointment as co-personal representative, Edwin contends that the only payment that could implicate section 3–712 is the post-appointment payment. Eaton contends that 18–A M.R.S. § 3–1001(a) (2005) [6] gives the court broad discretion to order Edwin to repay the corporation for the pre-death, pre-appointment, and post-appointment payments, regardless of when these payments occurred, or when Edwin served as co-personal representative.

■ [¶ 14] We review de novo the authority of the Probate Court and its interpretation of the Probate Code. *In re Cyr*, 2005 ME 61, ¶ 11, 873 A.2d 355, 359; *Estate of Footer*, 2000 ME 69, ¶ 10, 749 A.2d 146, 149. A personal representative's powers and fiduciary duties do not commence until appointment. 18–A M.R.S. § 3–701 (2005). Accordingly, Edwin's powers and fiduciary duties commenced upon his appointment as co-personal representative on May 12, 1999, and ended on May 10, 2004, when he resigned. If a personal representative breaches his fiduciary duties, section 3–712 provides a remedy to interested persons: "If the exercise of power concerning the estate is improper, the personal representative is liable to interested persons for damage or loss resulting from breach of his fiduciary duty to the same extent as a trustee of an express trust." 18–A M.R.S. § 3–712.

---

6. Section 3–1001(a) provides in relevant part:
  (a) A personal representative or any interested person may petition for an order of complete settlement of the estate.... The petition may request the court to ... consider the final account or compel or approve an accounting and distribution, to construe any will or determine heirs and adjudicate the final settlement and distribu-

tion of the estate. After notice to all interested persons and hearing the court may enter an order or orders, on appropriate conditions, determining the persons entitled to distribution of the estate, and, as circumstances require, approving settlement and directing or approving distribution of the estate ....
18–A M.R.S. § 3–1001(a) (2005).

[¶ 15] Within three months after his appointment as co-personal representative, Edwin was required by statute to prepare and file with the court an inventory of property owned by the decedent at the time of his death.[7] *See* 18–A M.R.S. § 3–706 (2005). Although Edwin did not file the inventory until nearly five years after his appointment, the only relevant property owned by the decedent at the time of his death was his majority shareholder interest in the corporation, and Edwin did include those fifty shares in the decedent's inventory. The court did not accept the inventory and the two accountings filed by Edwin, however, and ordered that he repay the pre-death, pre-appointment, and post-appointment payments pursuant to 18–A M.R.S. § 3–712.

### 1. Pre-death Payment

[¶ 16] The court determined that the accounting should have included a notation of the pre-death payment. The amount paid from corporation assets prior to the decedent's death does not constitute "property owned by the decedent at the time of his death," which, in addition to a schedule of credits owed to the decedent, is the only property required to be included in the inventory. *See* 18–A M.R.S. § 3–706. Section 3–712 thus does not provide the court with the authority to order its repayment, and the court therefore erred in doing so.

### 2. Pre-appointment Payment

[¶ 17] The court also ordered repayment of the pre-appointment payment, which was made from assets of the corporation before Edwin was appointed as co-personal representative. Liability of a personal representative to the estate pursuant to section 3–712 applies to actions taken while in a fiduciary position and capacity. *See* 18–A M.R.S. § 3–712 (noting that "the *personal representative* is liable to interested persons for damage or loss resulting from breach of *his fiduciary duty* ") (emphasis added); 18–A M.R.S. § 3–701 (stating that "[t]he duties and powers of a personal representative commence upon his appointment"). Because section 3–712 does not authorize the court to order repayment of assets by one not acting in a fiduciary capacity, the court also erred in ordering Edwin to repay the pre-appointment payment.

### 3. Post-appointment Payment

[¶ 18] The court does have the authority, however, to order the repayment of the post-appointment payment pursuant to 18–A M.R.S. § 3–712. The court was thus authorized to order that Edwin's payment of $4254.43 to himself and Faith be repaid to the corporation because that payment was made while Edwin was the co-personal representative and thus was subject to fiduciary duties to the estate, which included a fiduciary duty to avoid diminishing the value of an estate asset—in this case, the majority shareholder interest in the corporation. *See* 18–A M.R.S. § 3–709 (2005) (stating that the duties of a personal representative include "tak[ing] all steps reasonably necessary for the management, protection and preservation of, the estate in his possession"). The court's conclusion that this payment should be repaid by Edwin is also supported by 18–A M.R.S. § 3–713, which provides that "any transac-

---

7. Section 3–706 provides in pertinent part:
    Within 3 months after his appointment, a personal representative . . . shall prepare and file or furnish an inventory of property owned by the decedent at the time of his death, listing it with reasonable detail, and indicating as to each listed item, its fair market value as of the date of the decedent's death . . . .
    18–A M.R.S. § 3–706 (2005).

tion which is affected by a substantial conflict of interest on the part of the personal representative, is voidable by any person interested in the estate."[8] 18–A M.R.S. § 3–713 (2005).

## C. Claims Against the Corporation for Unpaid Compensation and Interest

[¶ 19] Edwin further contends that the court erred in denying his and Faith's claims against the corporation for unpaid compensation, and in denying his claim that he was owed principal and interest on shareholder loans. Because these claims pre-date the decedent's death, and because neither the corporation nor Faith are parties to this probate proceeding, those claims should not have been addressed by the court.

[¶ 20] We review de novo whether the Probate Court has subject matter jurisdiction. *In re Cyr*, 2005 ME 61, ¶ 11, 873 A.2d at 359. "The Probate Court's jurisdiction covers all matters relating to the settlement of the estate." *Estate of Hodgkins*, 2002 ME 154, ¶ 14, 807 A.2d 626, 630 (emphasis omitted); *see* 4 M.R.S. § 251 (2005). Subject matter jurisdiction is granted to the Probate Court "over all subject matter relating to … estates of decedents," 18–A M.R.S. § 1–302(a) (2005), and the court "has full power to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it," 18–A M.R.S. § 1–302(b) (2005).

[¶ 21] Although the Probate Court has jurisdiction over all matters relating to the settlement of an estate, *see Estate of Hodgkins*, 2002 ME 154, ¶ 14, 807 A.2d at 630, the claims of Edwin and Faith are being asserted as claims against the corporation rather than the estate. At issue are alleged corporate promises to pay compensation to Edwin and Faith for various services rendered between 1992 and 1998, and to repay Edwin principal and interest due on shareholder loans. The Probate Court may have concurrent jurisdiction over some claims, but because neither Faith nor the corporation were parties to the probate proceeding, and these claims are not related to the settlement of the estate, the court lacked the authority to address those issues in this case. *Cf. Estate of Hodgkins*, 2002 ME 154, ¶ 14, 807 A.2d at 630–31 (holding that the Probate Court had concurrent jurisdiction over a tort claim that could have been pursued in the District Court or the Superior Court). Thus, the Superior Court is the appropriate venue for addressing these claims.

## D. Award of Attorney Fees

[¶ 22] Edwin finally contends that the court erred in awarding Eaton attorney fees and denying the same to him. The Probate Court has considerable discretion in awarding attorney fees to the parties and the personal representative. 18–A M.R.S. §§ 1–601, 3–720 (2005);[9] *Estate of*

---

8. Although 18–A M.R.S. § 3–1001(a) (2005) provides the Probate Court with the discretion to compel or approve an accounting, we disagree with Eaton that this section provides the court with the authority to order repayment of the pre-death and pre-appointment payments. We note, however, that M.R. Civ. P. 23A does provide for shareholder derivative actions in the Superior Court. Likewise, Edwin and Faith may be able to pursue claims that the corporation owed them the value of the post-appointment payment,

claims which the Probate Court lacked the authority to address.

9. Title 18–A M.R.S. § 1–601 (2005) provides in relevant part: "In contested cases in the original or appellate court of probate, costs may be allowed to either party, including reasonable … attorney's fees, to be paid to either or both parties, out of the estate in controversy, as justice requires." Title 18–A M.R.S. § 3–720 (2005) similarly provides: "If any personal representative or person nomi-

*Ricci,* 2003 ME 84, ¶ 28, 827 A.2d 817, 825. In view of the fact that we are vacating much of the court's order, the court's award of attorney fees should be vacated as well.

The entry is:

The decision that the note from the decedent's granddaughter had been forgiven, and the orders denying Edwin's motion for further findings of fact and requiring repayment of $4254.43 are affirmed. In all other respects, the judgment is vacated and remanded to the Probate Court for further proceedings consistent with this opinion.

nated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not he is entitled to receive from the estate his necessary expenses and disbursements including reasonable attorneys' fees incurred."