2010 ME 23

**ESTATE OF Eldon C. HUNT.**

Supreme Judicial Court of Maine.

Argued: Feb. 10, 2010.
Decided: March 18, 2010.

James A. Hopkinson, Esq. (orally), Hopkinson & Abbondanza, Portland, ME, for Forrest C. Hunt.

Stephen E.F. Langsdorf, Esq. (orally) *, Jonathan G. Mermin, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, ME, for Norman C. Hunt and Robert Hunt.

Jerrol A. Crouter, Esq., Drummond Woodsum, Portland, ME, for the Personal Representative, Bangor Savings Bank.

Frank K.N. Chowdry, Esq., Jensen Baird Gardner & Henry, Portland, ME, for Wilder A. Hunt.

Hylie A. West, Esq., Damariscotta, ME, for Eldon C. Hunt, Jr.

Joel F. Bowie, Esq., Howard & Bowie, Damariscotta, ME, for the Estate of Raymond E. Hunt.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Forrest C. Hunt appeals from a judgment of the Lincoln County Probate Court (*Berry, J.*) construing a devise of property in Newcastle contained in his father's will and reforming the devise to conform to local zoning ordinances. On appeal, Forrest argues that (1) because the devise violated local zoning ordinances, it failed as a matter of law, thereby necessitating its distribution as part of the will's residuary provision pursuant to 18–A M.R.S. § 2–606(a) (2009); and (2) even if the devise did not fail, the Probate Court exceeded its authority to reform the will. We affirm the judgment.

## I. BACKGROUND

[¶ 2] The record, taken in the light most favorable to support the court's judgment, is as follows. *See Batchelder v. Realty Res. Hospitality, LLC,* 2007 ME 17, ¶ 3, 914 A.2d 1116, 1118.

[¶ 3] Eldon Hunt was a widower with five sons: Forrest, Norman, Wilder, Eldon Jr., and Raymond. In 2005, Eldon completed a will. On February 1, 2007, following his death, the will was submitted for informal probate. In the will, Eldon divid-

* Note by Reporter of Decisions: Stephen E.F. Langsdorf, Esq., represented all appellees at oral argument.

ed and distributed a large parcel of property located in Newcastle. He devised separate parcels with cottages to Wilder, Raymond, Eldon Jr., and Norman (the brothers) and devised the remainder of the property as a "Common Area" to those four sons and his grandson Robert. Eldon's will indicated that he considered his son Forrest "to have received [his] specific distribution[ ] during the lifetime" and therefore did not devise any of the Newcastle property to Forrest. All parties agreed that the individual parcels resulting from the division of this real estate, as provided in the will, failed to conform to local zoning ordinance requirements of minimum lot size and frontage.

[¶ 4] In August 2007, Wilder filed a petition for order of complete settlement pursuant to 18–A M.R.S. § 3–1002 (2009). Wilder sought a construction of the will that permitted distribution of the Newcastle real estate in accordance with a previous plan of distribution prepared in 2002, rather than the plan of distribution that was made part of the will. Wilder, Raymond,[1] and Eldon Jr. all asserted that Wilder's proposed construction was necessary in order to avoid violating the shoreline standards of Newcastle's land use ordinance. Forrest objected, asserting that the devise failed because it violated local zoning ordinances. On this basis, he asserted that the real estate should pourover to the revocable living trust established in the residuary provision of Eldon's will, to be distributed equally among all of Eldon's children. Norman argued that the proposed construction was unnecessary be-cause the real estate was functionally divided at an earlier time when the lots complied with the existing ordinance, and therefore the lots were grandfathered and the devise was legal at the time that the will was written.

[¶ 5] The court heard evidence on the petitions on March 25, 2009, including the testimony of John Wood, a surveyor appointed by the court as an expert witness pursuant to M.R. Evid. 706(a). Wood proposed a revised plan for dividing the property that would satisfy local zoning requirements. This revised plan changed the boundaries of the common area and the boundaries of the individually owned lots; the size of the individually owned lots was increased at the expense of the common area and the boundaries between the lots were also altered. All of the intended beneficiaries of the devise supported Wood's revised plan and the court adopted it, rejecting Forrest's argument that the devise had failed. This appeal followed pursuant to 18–A M.R.S. § 1–308 (2009).

## II. DISCUSSION

■ [¶ 6] Forrest contends that the will's devise of the Newcastle property failed pursuant to 18–A M.R.S. § 2–606(a), which states: "Except [in cases of antilapse,] if a devise other than a residuary devise fails for any reason, it becomes a part of the residue." He further argues that the Probate Court lacked authority to reform the devise in the will by partitioning the affected parcels.[2] The brothers argue that the devise did not fail and that

---

1. Raymond passed away during these proceedings. His estate was substituted as a party prior to the evidentiary hearing on Wilder's petition.

2. Forrest also contends that the court improperly admitted expert testimony for the purpose of construing the will. The record indicates, however, that Forrest failed to object to this testimony at trial and that the expert testimony was admitted for the purpose of reformation rather than construction. Forrest also asserts in his brief that the record lacks sufficient evidence to support the court's final order. We are not persuaded by this contention and do not address it further.

the Probate Court is authorized to reform the devise to conform to zoning requirements pursuant to its equitable authority. Our review of the authority of the Probate Court and the construction of the Probate Code is de novo. *See, e.g., Estate of Colburn,* 2006 ME 125, ¶ 14, 909 A.2d 214, 218.

## A. Devise Failure Pursuant to 18–A M.R.S. § 2–606(a)

■ [¶ 7]  Courts that have considered whether noncompliance with zoning ordinances affects the validity of an otherwise valid devise have concluded that it does not. *See In re Estate of Hurt,* 681 N.W.2d 591, 593–94 (Iowa 2004); *In re Estate of Sayewich,* 120 N.H. 237, 413 A.2d 581, 583 (1980); *Metzdorf v. Rumson,* 67 N.J.Super. 121, 170 A.2d 249, 252–53 (App.Div. 1961); *Estate of Williams v. Williams,* 357 Pa.Super. 476, 516 A.2d 359, 362 (1986). In *In re Estate of Sayewich,* the New Hampshire Supreme Court considered whether a devise of property failed because the property had not received municipal subdivision approval.  The Court concluded that the devise did not fail, because subdivision regulations affect use, not alienability:

> Subdivision regulations are not a means of controlling the alienability of land, but of promoting the orderly and planned growth of a municipality.  To the extent that it promotes the health, safety, morals and general welfare of the community, the imposition of subdivision regulations is a proper exercise of the police power.  Although these controls may restrict certain *intervivos* transfers of real property, their focus is on the use and development of land and not its alienability.

> The focus of our laws relating to the testamentary disposition of property is on the passage of title in accordance with the intent of the decedent.... Furthermore, the passage of title to a devisee has no bearing on the use or development of that property.  Devisees must still comply with local subdivision regulations if they wish to develop or transfer their property.  Compliance with subdivision regulations is neither excused nor obviated by the division of property under the terms of a will.

*In re Estate of Sayewich,* 413 A.2d at 583 (citations omitted).

■ [¶ 8]  Zoning laws control the ways in which the owner may use the land, and not the owner's right of ownership.  We see no justification for applying zoning laws so as to extinguish the owner's ability to transfer ownership of land upon the owner's death. In this case, if the Probate Court had not conformed the property to the applicable zoning requirements as the beneficiaries of the devise requested, but had instead ordered the parcels to pass to the beneficiaries as described in the will, the beneficiaries would have received title to their respective parcels from the Estate.  Each could have then sought a zoning variance from the Town of Newcastle.  In the alternative, each might have contended, as Norman has argued, that a variance is not required because his parcel is grandfathered from current zoning requirements.  Both possibilities demonstrate that the conveyance of property from an estate's personal representative to a beneficiary may generate zoning issues with which the beneficiary will have to contend.  Alternatively, the brothers could have agreed privately, after conveyance from the estate, to conform their lots to the applicable zoning ordinances by transferring their interests accordingly.

[¶ 9]  Forrest cites no legal authority to support his assertion that section 2–606(a) should be construed so that the violation of

a land use ordinance causes a devise to fail. We see no reason to adopt this view.

### B. Equitable Jurisdiction to Partition

[¶ 10] The brothers argue that the Probate Court had jurisdiction to partition the property to conform to current zoning requirements pursuant to 18–A M.R.S. § 3–911 (2009), which grants the court jurisdiction to partition undivided property:

> When 2 or more heirs or devisees are entitled to distribution of undivided interests in any real or personal property of the estate, the personal representative or one or more of the heirs or devisees may petition the court prior to the formal or informal closing of the estate, to make partition. After notice to the interested heirs or devisees, the court shall partition the property in the same manner as provided by the law for civil actions of partition. The court may direct the personal representative to sell any property which cannot be partitioned without prejudice to the owners and which cannot conveniently be allotted to any one party.

The Probate Court's authority to partition property is similar to that of the Superior and District Courts granted pursuant to 14 M.R.S. §§ 6501–6525 (2009). In addition, the Probate Court is invested with equitable jurisdiction "extend[ing] to all matters relating to the administration of estates." *See Estate of Haynes*, 594 A.2d 1112, 1113 (Me.1991); *see also* 4 M.R.S. § 252 (2009).[3]

[¶ 11] We have previously held that the Superior Court's equity jurisdiction to partition land attaches when a civil action is brought seeking partition of the property. *See Murphy v. Daley*, 582 A.2d 1212, 1213 (Me.1990). Equitable partition "is a more flexible procedure than a civil action for partition." *Id.* Because section 3–911 permits the Probate Court to partition property "in the same manner as provided by the law for civil actions of partition," and because the Probate Court has equitable jurisdiction in "all cases and matters relating to the administration of the estates of deceased persons" pursuant to 4 M.R.S. § 252, the Probate Court had the authority to equitably partition the Newcastle property pursuant to the affected devisees' express request.

The entry is:

Judgment affirmed.

---

3. Title 4 M.R.S. § 252 (2009) provides in its entirety:

> The courts of probate shall have jurisdiction in equity, concurrent with the Superior Court, of all cases and matters relating to the administration of the estates of deceased persons, to wills and to trusts which are created by will or other written instrument. Such jurisdiction may be exercised upon complaint according to the usual course of proceedings in civil actions in which equitable relief is sought.