STATE OF MAINE                                    SUPERIOR COURT
KENEBEC, ss.                                      AUGUSTA
                                                  DOCKET NO. AP-14-69



MARC G. MOSHER,
Petitioner



v.                                                **DECISION AND ORDER**



MAINE STATE HARNESS
RACING COMMISSION,[1]
        Respondent


        This matter was brought before the undersigned for oral argument with
respect to Petitioner's Complaint for Review of Final Agency Action pursuant to
Rule 80C, M.R.Civ.P. (hereinafter, "80C Appeal"). After listening to the
arguments of counsel and reviewing the Administrative Record (hereinafter
"Record") as well as reviewing Title 8 M.R.S. § 283, the legislative history for
Section 283, and relevant case law, the Court enters the following **Decision and
Order** for the reasons stated below:

I. *Background:*

        1. On or about April 14, 2014 the Petitioner applied to the Respondent for
a license as a driver/trainer. (Record at 83).

        1. On July 7, 2014 Respondent denied Petitioner's application for a
license as a Driver/Trainer for harness racing in the State of Maine. (Record at
85).

        3. The Respondent denied Petitioner's application pursuant to 8 M.R.S. §
283 which states in part that the Respondent shall refuse to license any person
who has been refused a license until notification from the jurisdiction that
refused to license the person that the person is again eligible for licensing in that
jurisdiction.[2]

---

[1] According to Respondent's Brief, Petitioner erroneously named the Maine Department of
Agriculture, Conservation and Forestry as the Respondent in this Rule 80C appeal.

[2] On December 16, 2011 the Gaming Commission for the State of New York refused to license
Petitioner "to participate in racing in the State of New York" because "your experience, character
and general fitness are such that your participation in racing or related activities would be

4. Petitioner had appealed the New York Commission's decision, but the appeal was never heard; instead, due to the delay in hearing the appeal and what the New York Commission described as a "lengthy passage of time since you last applied to participate in New York racing" the Commission decided to rescind its license denial and dismiss the Petitioner's appeal on March 25, 2014. (Record at 94).

5. Petitioner appealed Respondent's denial of his application on July 18, 2014. (Record at 89). The Respondent denied the appeal after hearing, finding that despite the New York Commission's decision to rescind Petitioner's license denial in the State of New York Petitioner had nevertheless failed to introduce sufficient evidence to demonstrate that he was again eligible for licensing in the State of New York subsequent to New York's decision on December 16, 2011 to refuse to license Petitioner. (Record at 3, 70). The Respondent reasoned that 8 M.R.S. § 283 did not "require that a license refusal in another jurisdiction be current but instead created a historical status that needs to be subsequently overcome...(O)nce refused a license an applicant must affirmatively show that they are or were subsequently eligible to be licensed by the entity that refused to license them..." (Record at 3).

6. Thereafter Petitioner filed this pending appeal.

## II. *Issue:*

**Did the Respondent correctly interpret the provisions of 8 M.R.S. § 283 when it refused to license the Petitioner based upon a prior refusal to license Petitioner in another jurisdiction, even though that refusal was subsequently "rescinded", when there was no evidence offered that the Petitioner was again eligible for licensing in that jurisdiction?**

## III. *Standard of Review:*

7. Judicial review of agency decision-making is to be deferential and limited. *Friends of Lincoln Lakes v. Bd. of Environmental Protection, 2010 ME 18.* The Court cannot substitute its judgment for that of the agency simply because the evidence presented at hearing could give rise to more than one result. *Dodd v. Secretary of State, 526 A.2d 583 (Me. 1987).*

8. A successful appellant must show not only that there was competent evidence in the record to support appellant's position but also that there was **no** competent evidence in the record to support an agency's findings. *Green v. Commissioner of the Dept. of Mental Health, Mental Retardation and Substance Abuse Servs., 2001 ME 86* (emphasis added).

---

inconsistent with the public interest, convenience or necessity, or with the best interests of racing generally..." (Record at 84).

9.    Finally, when reviewing an agency's interpretation of a statute that it administers, the Court shall defer to the agency's construction unless the statute **compels** a contrary result.    *Passadumkeag Mountain Friends v Bd. of Envtl. Prot., 2014 ME 116* (emphasis added).

## III. *Discussion:*

10. Title 8 Section 283 of the Maine Revised Statutes reads as follows:

"The    department    shall    obtain    current    listings    from    other jurisdictions    of    persons    in    harness    racing    occupations    regulated    by    the commission who have been refused a license or who have had their license revoked or suspended. The commission shall refuse to license or shall suspend the license of any person who has been refused a license or who has had that person's license revoked or suspended in another jurisdiction until notification from the jurisdiction that refused to license or suspended or revoked the license of the person that the person is again eligible for licensing in that jurisdiction."

11.    When interpreting a statute, the undersigned is supposed to look first to the plain meaning of the language contained in the statute to avoid absurd, illogical or inconsistent results.    *Estate of Hunt, 2010 ME 23.*

12.    The Court agrees with the Respondent's finding that Petitioner had in fact been refused a license from another jurisdiction, here the State of New York. That fact is indisputable.

13.    However, Section 283 states that, in light of the above, the Respondent must refuse to license Petitioner "until notification from the jurisdiction that refused to license (Petitioner)...that the (Petitioner) is **again eligible for licensing** in that jurisdiction..." (emphasis added).

14.    It appears to the undersigned that the Respondent may have determined that any attempt by Petitioner to get licensed in the State of New York was doomed, a determination that seems reasonable to the undersigned based upon the March 2014 letter from New York to Petitioner. The Respondent argues that because New York "explicitly refrained from opining on whether (Petitioner) was be (sic) eligible for licensure...[1](T)hus, his eligibility for receiving a license was left to be argued in the future before the New York Commission..." and that therefore "(U)nder no reasonable construction does it constitute a notification that (the Petitioner) is again eligible for licensure in New York...", *see* Respondent's Brief at 8.

---

[1] The New York Commission wrote "Please be advised that this administrative action taken by the Commission with respect to your appeal...does not infer or imply the future outcome with respect to any newly filed occupational license application." (Record at 94).

15. The problem with the letter (Record at 94) is that it is susceptible of various interpretations. About the only thing the undersigned finds that the letter **clearly** states is that the action taken by New York in rescinding its license denial and dismissing Petitioner's appeal should not be interpreted as predicting the outcome of any newly filed application in New York.

16. The Court finds that the heading for 8 M.R.S. § 283 is relevant to this discussion; the heading reads "Reciprocal Disciplinary Action." Thus, the intent of the law is to in essence honor other jurisdiction's findings that an applicant should be refused a license/suspended until/unless there is notification that the particular applicant is **again eligible for licensing in that jurisdiction.** 8 M.R.S. § 283.

17. There was evidence before the Commission that Petitioner was licensed in the States of California, Pennsylvania, and Florida, and that Petitioner was not presently under suspension in any jurisdiction. (Record at 40, 42).

18. "Eligible" has been defined as "qualified to be chosen." *Beaulieu v. Lewiston, 440 A.2d 334 (Me. 1982).* The undersigned could not find a definition for "eligible" in the pertinent statutes.

19. From a reading of the Record it is clear to the undersigned that some of the Commissioners struggled with the meaning of the language in Section 283. For example, at least initially one of the Commissioners stated "I – I don't see enough to deny this license. (Record at 55). Later, the same Commissioner stated "I have to go back to the fact that the statute is pretty clear that our – we can deny if a certain circumstance exists. And I didn't hear any evidence today that says that it does exist..." (Record at 61).

20. Another Commissioner stated that "I think I mentioned that this letter does not, to me, state that (Petitioner) is actually eligible for licensing in that jurisdiction, which is a requirement of our statute. It implies that he can file, that is all it does to me, not that he is actually eligible for licensing..." (Record at 67).

21. Finally, just before a vote was taken on a motion to deny the Petitioner's appeal, the Commissioner referenced in ¶18 above stated "I think we are lacking – and I don't disagree and I said that earlier – that it could be implied that the letter from New York indicates that (Petitioner) is eligible, but it does not say that..." (Record at 68-69).

22. This Court finds that there is competent evidence in the Record to support the Commission's findings that there was insufficient evidence presented to demonstrate that Petitioner is or was eligible for licensing in the State of New York subsequent to New York's refusal on December 16, 2011 to license Petitioner, i.e. that there was insufficient evidence presented that there was "notification from the jurisdiction that refused to license or suspended or revoked the license of the (Petitioner) that the (Petitioner) is again eligible for licensing in that jurisdiction..." 8 M.R.S. § 283. It seems to the undersigned that the uncertainty that exists over exactly what the March 24ᵗʰ, 2014 letter to

4

Petitioner from the New York Gaming Commission means could easily be cleared up by Petitioner; moreover, § 283 requires that the jurisdiction (here New York) that refused to license or suspended or revoked the license of the person (here Petitioner) notify (presumably Respondent) that the person (Petitioner) is **again eligible for licensing in that jurisdiction (New York)**. The Respondent found that hasn't happened yet, and the undersigned agrees.

23. For the reasons stated above, the undersigned affirms Respondent's decision to deny Petitioner's appeal of his application for licensure.

The Clerk is directed to incorporate this Decision and Order by reference into the docket for this case, pursuant to Rule 79(a), Maine Rules of Civil Procedure.

Date: 6/17/2015

BY _____

**Robert E. Mullen, Justice**
**Maine Superior Court**

5