BERTHA L. WIGHT,

TRUSTEE UNDER THE WILL OF CLARA B. WOOLLS

*vs.*

FLORENCE MASON, ET ALS. (DOCKET No. 1484).

ESTATE OF CLARA B. WOOLLS, BERTHA L. WIGHT, APPELLANT FROM THE DECREE OF THE JUDGE OF PROBATE (DOCKET No. 1470).

York.      Opinion, September 13, 1935.

*George W. Abele,*
*Verrill, Hale, Booth & Ives,* for Appellant.
*Mary A. Bradbury,*
*Waterhouse, Titcomb & Siddall,* for Appellee.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, HUDSON, JJ.

HUDSON, J.   Clara B. Woolls of Saco died September 13, 1924, leaving a will dated May 5, 1922, probated November 12, 1924.

54

Case No. 1484, on report, is a bill in equity praying for the construction and interpretation of this will, particularly of Paragraphs 19-a, 19-b and 19-c.

In Case No. 1470 Bertha L. Wight, Trustee under said will, presents exceptions to the final decree of the Supreme Court of Probate in said York County dated July 11, 1934, disallowing her appeal from the decree of the Judge of Probate in said county.

Beneficiaries named in the will particularly interested are Winifred M. Devine, married daughter and only child of the testatrix, the testatrix's grandchildren and friends, Ella M. Freeman and Florence Mason. In paragraph 1 she bequeathed $10,000.00 to her daughter; in paragraph 2, $20,000.00 to her daughter and Miss Freeman in trust for the education of the grandchildren; in paragraph 4 she devised to Miss Mason a life estate of real estate at 21 Cutts Avenue in Saco, consisting of a house, stable and about nine thousand square feet of land, with a remainder over to the trustee or trustees under said paragraph 19th of the will; in paragraphs 4 to 18 inclusive bequests to individuals, unions, churches and societies ranging in amount from $500.00 to $2,000.00 and aggregating $15,000.00.

Paragraph 19, of which construction and intepretation are sought, is:

"All the rest, residue and remainder of my estate, both real and personal, and wheresoever located, to *Ella M. Freeman,* in trust, nevertheless, for the following purposes:

"a. To pay from the net income thereof the sum of two thousand (2000) dollars each year in quarterly payments to said *Florence Mason,* during her life.

"b. To pay from said net income during the lifetime of said *Florence Mason,* and for her benefit, if said property at 21 Cutts Avenue, Saco, Maine, is part of my estate at the time of my decease,—

"all taxes assessed by said City of Saco on said real estate;

"all premiums on fire insurance policies covering the same and covering all personal effects therein contained;

"all bills for coal necessary for heating said premises and for necessary repairs and improvements thereon.

"c. To pay the balance of said net income in monthly, quarterly or semi-annual payments, as may be deemed most convenient by the trustee or trustees, to my daughter, the said *Winifred M. Devine*, during her life; also such portion or portions of the principal sum for her proper maintenance and support as in their judgment may seem wise."

Then follow in sub-section d, (upon the decease of the daughter or in the event that the daughter should pre-decease the testatrix) certain trust provisions for the proper maintenance and support of the grandchildren and for final distribution to them upon the termination of the trust.

Miss Freeman did not qualify as trustee and in her stead were appointed Marcus S. Wight and Bertha L. Wight as provided in the will.

Involved are their joint account, covering the period from July 16, 1931, to May 23, 1932, and that of the surviving trustee, Bertha L. Wight, from May 23, 1932, to July 16, 1932, together covering a twelve-month period, both of which may be considered herein as one account.

Like questions of law are presented in the bill for construction and interpretation of the will and by the exceptions.

The exigency, prompting this litigation, is the fact that the income from the corpus of the trust estate has depreciated to such an extent that there can not be full compliance with the provisions of said paragraph 19. For the year in question the gross income was $2779.41. From this amount the trustees deducted uncontroverted disbursements of $817.83, leaving as net income $1961.58, insufficient by $38.42 to pay the annuity in full. Still they paid the annuitant $2000.00, the $38.42 necessarily coming out of the corpus.

Under paragraph 19-c, out of the corpus of the estate the trustees paid $2950.00 to the daughter.

The exceptant claims as grievances:

1. The disallowance of the $2950.00.

2. The disallowance of disbursements by the trustees of an amount totalling $596.42 on account of the Cutts Avenue real estate for taxes, insurance and painting.

3. The disallowance of so much of the two payments of $1000.00 each August 26, 1931, and February 23, 1932, to Florence Mason as is in excess of the said $1961.58.

4. The investments of the trust estate.

The last grievance, however, is not relied on in argument and so we disregard it.

"The controlling rule to be applied in construing the meaning and force of the provisions of a will is that the intention of the testator as expressed must govern, unless it is inconsistent with legal rule. Such intention may be determined by an examination of the whole instrument, including its general scope, logical implication and necessary inferences." *Green* v. *Allen et als.*, 132 Me., 256, 258, 170 A., 504, 505; *Davis et als.* v. *McKown, et als.*, 131 Me., 203, 209, 160 A., 458; *Edwards* v. *Packard*, 129 Me., 74, 77, 78, 149 A., 623; *Harris* v *Austin*, 125 Me., 127, 131 A., 206; *Cook* v. *Stevens*, 125 Me., 378, 381, 134 A., 195; *Thatcher* v. *Thatcher*, 117 Me., 331, 332, 104 A., 515; *Bodfish* v. *Bodfish*, 105 Me., 166, 170, 73 A., 1033.

In amplification of the above principle, may this be quoted from an extensive note in 94 A. L. R., 257:

"The question in interpreting a will is not what the testator actually intended, or what he meant to write, but merely what is the meaning of the words used in the will; not what intention existed in his mind, but what is expressed by the language of the will; . . ."

### *Paragraph* 19

We will now consider said paragraph 19 with its component parts, state their meaning where necessary, and make application to the particular alleged grievances.

*Sub-section a:* By sub-section a, a $2000.00 annuity is created payable to Florence Mason for life. Her counsel does not claim that this annuity is in the nature of a demonstrative legacy. Its payment is specifically required to come out of the net income. It is so stated plainly and without ambiguity. If and when the net in-

come is not sufficient, the loss falls upon the annuitant. The appellee contends that the Court should declare that there "be a theory of equitable abatement as between the annuitant, Miss Mason on the one hand and the power of appointment of the trustees to the remaindermen on the other." The will discloses nothing permitting this. It speaks unambiguously for itself. To it we can not in effect add provisions based on what we may think she would have had done, had she forseen shrinkage of her estate. It would be speculative so to do and there would be no certainty that it would carry out her intention. We may construe and interpret her language found in the will but not incorporate in it unused words and thereby place a construction on an untreated subject.

We can not "under a state of circumstances never in the testator's contemplation give a different construction to the will, and impose, as it were, a new intention upon the testator." *Veazie* v. *Forsaith*, 76 Me., 172, 184.

In the last cited case, on page 180, the Court, in discussing a distinction between a testamentary trust and one by deed, said:

"His" (meaning the testator) "is the property given, he can do with it as seemeth to him right. The legatees are but the objects of his bounty, and must submit to that which has been provided for them. Hence in a will the great purpose is to ascertain the meaning of the testator only. A deed is a contract, and in construing it we are to ascertain the meaning or the understanding of both parties to it."

Evidence was introduced as to the friendly relations between the annuitant and the testatrix, as well as the annuitant's financial means. There being no ambiguity in the will, this evidence was inadmissible. *Bodfish* v. *Bodfish*, supra, page 171; *Bryant* v. *Bryant*, 129 Me., 251, 258, 151 A., 429; *Cook* v. *Stevens*, 125 Me., 378, 380, 134 A., 195.

It is only where the will is ambiguous that extrinsic circumstances, such as the relation subsisting between the testator and the claimants or objects of his bounty, his intimacy or association with and affection or lack of affection for them and their relationship by blood or otherwise, are admissible. 94 A. L. R., 235, supra.

"Where no doubt exists as to the property bequeathed or the identity of the beneficiary there is no room for extrinsic evidence; the will must stand as written." *Mahoney et al.* v. *Grainger et al.*, 186 N. E., 86, 283 Mass., 189; also see *Kingman* v. *New Bedford Home for Aged*, 237 Mass., 323, 129 N. E., 449; *Calder* v. *Bryant*, 282 Mass., 231, 184 N. E., 440; *Moffatt* v. *Heon*, 242 Mass., 201, 136 N. E., 123.

However friendly the testimony may have shown the testatrix was toward Miss Mason, we can not know from any language in the will what, had she forseen the present condition of her estate, she would have had done under such circumstances as between her friend and her daughter. As a consequence, the trustees can not be allowed for the excess payment of $38.42 over and above the net income of $1961.58.

*Sub-section b:* Hereby was provision made for Miss Mason's benefit conditional upon the Cutts Avenue real estate being a part of the estate at the time of the testatrix' decease. It was. Thus it was provided that the trustees might pay only from net income certain debts that should be incurred on account of said real estate, as taxes assessed by the City of Saco, premiums on fire insurance policies covering it and personal effects therein, and bills for coal necessary for heating the buildings and for necessary repairs of and improvements thereon. Here again the language is plain and under this sub-section nothing can be paid by these trustees, even for purposes expressed therein, except out of net income.

So far paragraph 19 has dealt only with net income as a source. If there is not enough net income to pay both the annuity under sub-section a and the debts under sub-section b, whether payments shall be made on the annuity or on account of the Cutts Avenue property, is a matter for the trustees to determine, acting in good faith according to their best judgment and uninfluenced by improper motives. Nothing in this record discloses that the trustees acted otherwise, so, the net income having been exhausted by its application to the annuity, nothing of income remained by which the trustees under said sub-section b could pay these charges on account of this real estate.

*Sub-section c:* This sub-section deals both with income and corpus.

Under it, only if there be any of the net income left after payment of the annuity provided for in sub-section a and the payment of the debts as named in sub-section b, is income payable to the daughter.

Said sub-section c then provides that there may be paid to her "also such portion or portions of the principal sum for her proper maintenance and support as in their judgment may seem wise."

Thus the testatrix lodged a discretion in the trustees. How is it to be exercised? In good faith, according to their best judgment and uninfluenced by improper motives. When so exercised their discretion is not reviewable. *Kimball* v. *Blanchard,* 101 Me., 383, 390, 64 A., 645; *True Real Estate Company* v. *True & True,* 115 Me., 533, 539, 540, 99 A., 627; *Alford* v. *Richardson,* 120 Me., 316, 321, 114 A., 193.

"But whatever the reason, the bestowal of the power is made plain. Interference with the exercise of this power, will be employed on the part of the Court only when there is made to appear an abuse of discretion by proof 'of the fullest and clearest character.' *Morton* v. *Southgate,* 28 Me., 41." *Hichborn* v. *Bradbury,* 111 Me., 519, 523, 90 A., 325, 327.

"So long as he acts within his power, honestly and in good faith, his determination is conclusive." *Alford* v. *Richardson,* 120 Me., 316, 321, 114 A., 193, 196.

The appellee contends, however, that the rule as stated in the cases just cited is not correct but that adopted and applied in *Corkery* v. *Dorsey,* 223 Mass., 97, 101, 111 N. E., 795, preferable, namely, that the trustees must exercise that soundness of judgment which follows from a due appreciation of trust responsibility. The principal difference, it would seem, between the Maine and Massachusetts rules, is that Massachusetts holds the trustee to a soundness of judgment which follows a due appreciation of trust responsibility, no matter who the trustee is, while in Maine the requirement is that the best judgment of the particular trustee, uninfluenced by improper motives and exercised in good faith, be

exercised. We adhere to the Maine rule. We think it preferable with relation to a testamentary trust in which ordinarily the trustee is the personal selection of the testator and so is one of whom he has knowledge and in whom he places confidence. His intention is that his self-chosen trustee shall act according to *his* best judgment, not the judgment of someone else, though it be sound, or even of the Court; and as long as he does so in good faith, uninfluenced by improper motives, he commits no breach of his fiduciary obligation.

In *Alford* v. *Richardson*, supra, on page 321, appears a quotation from *Corkery* v. *Dorsey*, supra, but we do not consider that the Massachusetts rule is for that reason adopted in Maine. True, in *Alford* v. *Richardson*, supra, our Court dealt with "sound judgment" but in the will in that case the testator left "the whole matter to the sound judgment and discretion of the trustee."

"If a settlor has given his trustee a discretionary power, the court is reluctant to interfere with the trustee's use of the power . . . as long as the honest judgment and decision of the trustee can be obtained by the cestui on the use of the corpus, no matter how inefficient the cestui may think the trustee is in this respect, the beneficiary has no ground for complaint. He is getting just what the settlor provided for him. Hence chancery takes the position that it will not direct the trustee when and how to use his discretionary power, so long as he is honestly and with some degree of reason employing that power. Even though the Court would make a far different decision from that which the trustee has made or is about to make with regard to the discretionary power, the Court will not over-rule the trustee or take other action, unless he is refusing to exercise the power at all, or is guilty of bad faith, or is acting in a wholly unreasonable and arbitrary manner. . . . But if the trustee who has the discretionary power is wholly refusing to exercise his discretion, or is using the discretionary power in a manner which shows that he is obviously not honestly attempting to act for the benefit of the cestui, but is making decisions out of ill will toward the cestui, or capriciously, or from other motives which involve bad faith and abuse of his powers, equity will act and will direct the trustee to use his

discretion as the Court thinks it should be employed, or will, so far as possible, undo acts done by the trustee in abuse of his power." *Bogert on Trusts and Trustees*, Vol. 3, Sec. 560, on pages 1788, 1789, 1791, 1792 and 1793.

It not having been made to appear that these trustees exercised their discretion other than in good faith, according to their best judgment and uninfluenced by improper motives, their payment of $2950.00 out of the corpus to the daughter must be allowed.

As to Case No. 1484, the entry shall be, bill sustained; and as to Case No. 1470, exceptions sustained. Decrees in both cases in accordance with this opinion.

*So ordered.*