MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2014 ME 32
Docket:      Lin-13-115
Argued:      November 19, 2013
Decided:     February 25, 2014

Panel:       SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

## ESTATE OF ADA Y. GREENBLATT

JABAR, J.

[¶1]  Mark Levine, a beneficiary of the Estate of Ada Greenblatt, appeals from a judgment entered in the Lincoln County Probate Court (*Berry, J.*) completing settlement of the estate and ordering him to pay attorney fees and costs of part of the proceedings pursuant to M.R. Prob. P. 54(d).  Levine argues that the court erred in determining that the personal representatives of the estate did not breach their fiduciary duties when they distributed a religious print valued at $100 to one of the beneficiaries who was also a personal representative.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The evidence, viewed in the light most favorable to the court's judgment, supports the following findings of the Probate Court.  *See In re Estate of Hunt*, 2010 ME 23, ¶ 2, 990 A.2d 544.

[¶3]  Ada Greenblatt died testate and without issue on December 19, 2008.  Ada's will provides for two $10,000 bequests to charitable organizations and

2

specific bequests of $1,000 each to fourteen of her nieces and nephews. Ada's will further provides that the remainder of her estate was to be distributed to her brothers, sisters, and sister-in-law in equal shares, or if they are deceased, to their families, per stirpes. Ada's will provides no further instructions on how to distribute her residuary estate.

[¶4] Ada's residuary estate consists primarily of real property and personal property. Many of the personal property items do not have significant monetary value but have sentimental value to members of the family. Ada designated two personal representatives in her will: Owen Greenblatt, her brother, and Stephen Singer,[1] her nephew. The personal representatives opted to distribute the items of personal property that had sentimental value in kind. To distribute these items, the personal representatives provided the beneficiaries with a list of each item including the item's appraised value. From this list, the beneficiaries could then select the items that they wanted in the order of their preference.

[¶5] Before sending the list to the beneficiaries, Ada's only surviving siblings, Owen and Riva Greenblatt, were given the opportunity to select items that they wanted. The personal representatives did not inform the other residuary beneficiaries that Owen and Riva would have the opportunity to select items before

---

[1] Although the will appointed Ada's brothers, Owen and Isear Greenblatt, as the two personal representatives, Isear had predeceased Ada. Thus, the will appointed Stephen Singer as the successor personal representative.

the remaining beneficiaries. Owen and Riva selected a few items from the list, some of which were then marked as "unavailable" on the list, and the personal representatives sent the list of items to the remaining beneficiaries.

[¶6] This dispute centers on the distribution of a single item of personal property in Ada's residuary estate, a mizrah (an ornamental religious print) valued at $100. Owen selected the mizrah, but it was not marked as unavailable on the list. Mark Levine, a residuary beneficiary of the estate,[2] received the list of personal property items to be distributed in kind, and he also selected the mizrah. Levine was later informed that the mizrah was unavailable because Owen had already selected it. Levine challenged the distribution of the mizrah, and he responded with a three-page letter to the attorney for the Estate, alleging that Owen had breached his fiduciary duties as a personal representative by taking the mizrah.

[¶7] After Levine sent the letter objecting to the distribution of personal property, he did not participate in any further actions related to the distribution of the estate's property. Specifically, in order to distribute the estate's real property interests, the personal representatives asked each residuary beneficiary to sign a waiver of notice and limited power of attorney so that they could sell the property.[3]

---

[2] Levine is Ada Greenblatt's nephew. He is a residuary beneficiary because his mother, Ada's sister, predeceased Ada.

[3] Ada's residuary estate also included her interest in her parents' home, where Ada lived before her death. After Ada's parents died, Ada and her siblings received equal interests in the home. Thus, in

4

Levine declined to sign the documents and refused to respond to further requests to participate in a sale. Accordingly, the personal representatives filed a petition to partition the proceeds from the sale of the home. *See* 18-A M.R.S. § 3-911 (2013). After at least eight attempts at serving Levine, the summons and complaint for the partition action was posted to the door of his home. Levine failed to file a responsive pleading and did not appear at the hearing. On October 26, 2011, the Superior Court entered a default judgment partitioning the proceeds from the sale of the real property.

[¶8] After the sale of the real property and court-ordered partition of the proceeds, the personal representatives petitioned the Probate Court for an order completing settlement of the estate. *See* 18-A M.R.S. § 3-1001 (2013). Levine opposed the petition, claiming that Owen Greenblatt breached his fiduciary duty to the estate by taking the mizrah. Further, Levine argued that because the personal representatives breached their fiduciary duties, the court should not allow the personal representatives to be reimbursed for legal fees with estate funds. *See* 18-A M.R.S. § 3-720 (2013).

[¶9] The court entered a judgment completing settlement of the estate after making "minor adjustments" to the personal representatives' accounting of the

---

addition to being residuary beneficiaries to Ada's estate, Ada's siblings and their heirs were also partial owners of the home in Bath.

estate's expenses. With respect to Levine's allegations of a breach of fiduciary duty, the court found that although the distribution of personal property was "not perfect," it was "not improper."

[¶10] Further, the court granted the Estate's request for costs and attorney fees with respect to the partition action, finding that Levine's failure to cooperate in the sale of the estate's real property resulted in the "needless . . . filing [of] the expensive partition action that only accomplished what would have been achieved if [Levine] . . . had simply signed and returned the waivers and powers [o]f attorney." *See Estate of McCormick*, 2001 ME 24, ¶ 25 n.10, 765 A.2d 552 (discussing sanctions for the filing of a "frivolous or malicious claim or objection"); M.R. Prob. P. 54(d). Levine timely appealed. *See* M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶11] Levine argues that although the court found that the distribution scheme was "not improper," it erred in failing to conclude that Owen breached his fiduciary duty as a personal representative in distributing the mizrah to himself.

[¶12] "When an order of the Probate Court is appealed, we defer to the Probate Court on factual findings unless they are clearly erroneous, but we review *de novo* the application of the law to the facts." *Estate of Horne*, 2003 ME 73, ¶ 17, 822 A.2d 1177. Personal representatives of an estate are fiduciaries, and

6

pursuant to 18-A M.R.S. § 3-703(a) (2013), they must observe the same standards of care that apply to trustees of an express trust as set out in specified provisions of the Maine Uniform Trust Code. *See* 18-B M.R.S. §§ 802-803, 805-807 (2013). Among the standards of care that apply to personal representatives are the duties of loyalty and impartiality. *See* 18-A M.R.S. § 3-703(a) (citing 18-B M.R.S. §§ 802-803).

[¶13] Although Levine argues that Owen breached the duty of loyalty, he does not allege that Owen took any action that was not "solely in the interests of the beneficiaries." *See* 18-B M.R.S. § 802(1). Rather, Levine argues that the personal representatives treated some beneficiaries more favorably than they treated others. Thus, we proceed to analyze whether the personal representatives' actions violated the duty of impartiality pursuant to 18-B M.R.S. § 803.

[¶14] The duty of impartiality generally applies if there are two or more beneficiaries with interests in an estate, and it requires a personal representative to "act impartially in . . . managing and distributing the [estate] property, giving due regard to the beneficiaries' respective interests." *Id.* In other words, the personal representative "represents all the beneficiaries under the will and, in so doing, must adopt a neutral position respecting their conflicting claims." *Desmond v. Persina*, 381 A.2d 633, 638 (Me. 1978). Further, the duty of impartiality includes a restriction that "the executor may not take sides in the adjudication of the

individual claims of beneficiaries one against another." *In re Estate of Morine*, 363 A.2d 700, 704 (Me. 1976).

> [¶15] However, with respect to the scope of a duty of impartiality:

> It would be overly simplistic, and therefore misleading, to equate impartiality with some concept of "equality" of treatment or concern—that is, to assume that the interests of all beneficiaries have the same priority and are entitled to the same weight in the trustee's balancing of those interests.

Restatement (Third) of Trusts § 79 cmt. b (2007). Similarly, the comment to section 803 of the Uniform Trust Code, on which the Legislature based 18-B M.R.S. § 803,[4] states: "The duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust." Unif. Trust Code § 803 cmt., *included with* 18-B M.R.S.A. § 803 (2012). In sum, "it is the trustee's duty, reasonably and without personal bias, to seek to ascertain and to give effect to the rights and priorities of the various beneficiaries or purposes as expressed or implied by the terms of the trust." Restatement (Third) of Trusts § 79 cmt. b. If the will appoints a beneficiary to serve as a personal representative, we note that the personal representative does not automatically breach a fiduciary duty by distributing assets to himself or herself as a beneficiary. *See generally* Restatement (Third) of Trusts §§ 78 cmt. c(2), 79 cmt. b(1) (2007).

---

[4] *See* L.D. 921, Summary (121st Legis. 2004) (adopting the revised Uniform Trust Code).

8

[¶16]  It is undisputed that the personal representatives in this case had the discretion to determine how to distribute the residuary assets.  *See* 18-A M.R.S. § 3-906(a)(4) (2013) ("Residuary assets may be distributed, at the personal representative's discretion, in pro rata or non pro rata shares.").  When the will confers discretion on the personal representatives, we defer to the decisions of the personal representatives, absent an abuse of their discretion.  *See Alford v. Richardson*, 120 Me. 316, 321-24, 114 A. 193 (1921) ("[When a] will invests the trustee with the right to use his discretion . . . [s]o long as he acts within his power, honestly and in good faith, his determination is conclusive."); *see also Wight v. Mason*, 134 Me. 52, 59-61, 180 A. 917 (1935); Restatement (Third) of Trusts § 50 cmt. b (2003).  The will did not provide specific instructions on how to distribute the residuary assets, and the Probate Code provides only minimal guidance, stating that personal representatives shall distribute the residuary assets of the estate "in accordance with the best interests of the residuary devisees."   18-A M.R.S. § 3-906(a)(4).

[¶17]  Here, in distributing the residuary assets, the personal representatives created a thirteen-page list of personal property items that they determined had sentimental value to the residuary beneficiaries.  The personal representatives complied with section 3-906(a)(4), which permits them to distribute property in

kind to the beneficiaries, in a non pro rata share, if the items are "valued as of the date on which they are distributed."

[¶18]  Then, the personal representatives gave Ada's only surviving siblings, Owen and Riva, the opportunity to select items before distributing the list of items to the remaining residuary beneficiaries.  The items to be distributed in kind were primarily items that originally belonged to Owen and Ada's parents—Levine's grandparents.  Owen testified that the personal representatives determined that each of the residuary beneficiaries "should have a chance to retain some memento from Ada, and by extension [Owen and Ada's] parents."

[¶19]  It was reasonable and consistent with the best interests of the beneficiaries for the personal representatives to determine that the surviving family members in the nearest degree of kinship to Ada's parents, who had grown up in the home with those items, should have the opportunity to select among the items before giving the same opportunity to the remaining residuary beneficiaries.  *See id.*; Restatement (Third) of Trusts § 79 cmt. b.  Further, the evidence in the record indicates that when the personal representatives created the plan, and when Owen selected the mizrah, he was unaware that any other beneficiary wanted the item. Thus, the evidence supports the court's implicit finding that Owen was not motivated by a personal bias.  *See* Restatement (Third) of Trusts § 79 cmt. b.

10

[¶20]   The mizrah was valued at $100, and Owen offset his remaining residuary interest in the estate by that amount.  Thus, the in-kind distributions did not alter the proportionate shares of the estate that each residuary beneficiary ultimately received.  Because this distribution scheme and Owen's selection of the mizrah was not an abuse of the personal representatives' discretion and, thus, did not violate the fiduciary duty of impartiality, we decline to disturb the Probate Court's determination that the personal representatives' actions were "not improper."[5]

The entry is:

> Judgment affirmed and motion for sanctions denied.

---

**On the briefs and at oral argument:**

Nicholas H. Walsh, Esq., Nicholas H. Wash P.A., Portland, for appellant Mark Levine

Noreen A. Patient, Esq., Eaton Peabody, Brunswick, for appellees Owen Greenblatt and Stephen Singer

Lincoln County Probate Court docket number 2012-0191
FOR CLERK REFERENCE ONLY

---

[5]   The estate has also filed a motion pursuant to M.R. App. P. 13(f) for treble costs and reasonable expenses, arguing that Levine's contentions on appeal are frivolous and made with no reasonable likelihood of success.  Because this appeal does not lack merit, we decline to award sanctions. *Cf. Estate of Dineen*, 2006 ME 108, ¶ 8, 904 A.2d 417.