MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2024 ME 41
Docket:         Cum-23-248
Argued:         January 9, 2024
Decided:        May 23, 2024

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, and DOUGLAS, JJ.

## ESTATE OF LINDA C. GIGUERE

DOUGLAS, J.

[¶1]  Eric and Mark Giguere appeal from an order on a petition for instructions (Cumberland County Probate Court, *Aranson, J.*) determining that the entire estate of Linda C. Giguere passes by intestacy to her daughter, Hilary Barlow.  They argue that the court erred by declining to reform Linda's 2013 will.  We disagree and affirm the judgment.

## I.  BACKGROUND

[¶2]  Linda Giguere died on September 22, 2021.  Linda's[1] Last Will and Testament, dated January 16, 2013, nominated William Giguere, her husband, to serve as personal representative.  Article Six of the 2013 will established a trust for the benefit of William in the event that Linda predeceased him providing in relevant part as follows:

---

[1]  Once individuals have been identified by their full name, we may refer to them subsequently only by first or last name for the sake of economy or clarity.

>    If my husband, WILLIAM D. GIGUERE, is deemed to have survived me, all the rest, residue and remainder of my estate, whether real, personal, or mixed, including the proceeds of any life insurance which may become payable to my estate, I give, devise and bequeath to ERIC GIGUERE, presently of Westbrook, Maine, as Trustee for my husband, WILLIAM D. GIGUERE, hereinafter "WILLIAM." . . . The trustee may, in his sole discretion, amend this trust to conform with changes in federal or state law or regulations established thereunder in order to better effect the purposes of the trust. . . .

>    MARK GIGUERE shall be trust protector.

>    . . . .

>    Upon WILLIAM's death, the Trustee may pay the expenses of his last illness and funeral, and all administrative expenses relating to this Trust, including reasonable attorneys' and accountants' fees . . . . Whatever balance is then remaining shall be paid to WILLIAM's children, in equal shares, the children of a deceased to take the parent's share by right of representation.

[¶3]  Article Seven of the 2013 will provided as follows:

>    I have in mind all other possible recipients of my bounty, including my daughter, HILARY BARLOW, from whom I am estranged, but unless I have specifically mentioned them herein, to them I leave nothing.

The 2013 will contained no provision addressing the disposition of Linda's residuary estate in the event that William predeceased her.

[¶4]  William died on March 7, 2015, predeceasing Linda.  Linda did not execute a new will after William's death.

[¶5]   On October 6, 2021, Linda's daughter, Hilary Barlow, filed in Cumberland County Probate Court an application for the informal appointment of a personal representative of her mother's estate.  The application stated that Hilary was "unaware of any unrevoked testamentary instrument relating to property having situs" in Maine.  The Register of Probate appointed Hilary as personal representative on October 28, 2021.

[¶6]   On June 14, 2022, Attorney Jeremy W. Dean, acting as Linda's attorney and the person in possession of Linda's will, filed a petition for formal probate of the 2013 will and appointment of personal representative, requesting the removal of Hilary as personal representative and petitioning for the formal appointment of an individual named Teri McRae to serve as personal representative.   The petition stated that the person named as personal representative in the 2013 will, William Giguere, was deceased and that the successor personal representative named in the will, Attorney Susan Hunter, had renounced her right to be appointed.  The petition identified William's sons, Eric P. Giguere and Mark S. Giguere, as devisees.

[¶7]  On August 2, 2022, Eric filed a petition for the formal probate of the will and appointment of a personal representative.  Among other things, the petition requested that Eric be appointed as personal representative of the

estate because he is both a beneficiary of the trust and a residual devisee of the 2013 will, and Teri McCrae "has no priority for appointment."  Eric filed another petition on October 27, 2022, requesting the appointment of Attorney Justin D. Leblanc as personal representative.  Subsequently, on November 18, 2022, the court entered an order removing Hilary as personal representative and appointing Attorney LeBlanc as successor personal representative.

[¶8]  On January 9, 2023, Attorney LeBlanc filed a petition for instructions.  The petition asserted that the 2013 will "does not dispose of [Linda's] estate" because William predeceased Linda and the 2013 will "makes no provision for the disposition of tangible personal property or the residuary estate in the event that William . . . predeceases [Linda]."  The petition additionally asserted that the 2013 will "appears to contain a scrivener's error"; that the court may look to extrinsic evidence if the decedent's intent cannot be ascertained from the four corners of the will; that the 2013 will "plainly expresses that [Linda] did not intend to leave anything to her daughter . . . or to anyone else not specifically mentioned," but under the law of intestacy, Hilary would inherit Linda's estate; and in light of a "strong presumption against intestacy," the court has authority under the Maine Probate Code to reform the

will.  The petition requested that the court provide instructions on "how and to whom [Linda's] estate should be distributed."

[¶9]  The parties filed responses to the petition for instructions.  The court scheduled a status conference for April 5, 2023.

[¶10]  On March 22, 2023, the parties deposed Attorney Susan Hunter, whom Linda and William had consulted for estate planning advice and who had drafted several wills for them, including Linda's 2013 will.  Attorney Hunter first prepared wills for Linda and William in March 2011.  By 2012, William's health was deteriorating.  Attorney Hunter prepared revised wills for Linda and William in 2012 to reflect several requested changes in their estate plan, including the establishment of reciprocal special needs trusts.  Linda's 2012 will, executed on July 6, 2012, provided that if William survived her, the remainder of her estate (excluding tangible personal property which was separately devised) would go to a trust for William's benefit.  Her 2012 will designated William's son Eric as trustee and provided that upon William's death, "[w]hatever balance is then remaining" in the trust would pass to Linda's daughter, Hilary.  It further specified that if William predeceased Linda, the remainder of her estate was to pass to Hilary.[2]

---

[2]  At the time they executed the 2012 wills, Linda and William each executed general durable powers of attorney appointing the other as his or her attorney-in-fact.  In Linda's case, Hilary was

6

[¶11]  In January 2013, Linda contacted Attorney Hunter and said that she wanted to omit Hilary from her will.  Attorney Hunter made the requested change by inserting the language in Article Seven, quoted above.  When Attorney Hunter asked how Linda wanted to dispose of the remainder of her estate in the event William predeceased her, Linda said that "she wasn't ready to make a decision and so she said we'll deal with that later."  Attorney Hunter distinctly understood at the time that "[Linda] wasn't ready" to designate a recipient of her residuary estate in the event that William predeceased her.  Attorney Hunter did not recall having a discussion with Linda about the consequences of failing to designate a residuary devisee in the will or how intestate succession operated under Maine law.  Attorney Hunter was certain, though, that it was Linda's intention at the time not to include a provision in the 2013 will disposing of her residuary estate in the event that she survived William and that the absence of such provision was not a scrivener's error.[3]

---

designated as an alternate attorney-in-fact in the event William was unable or unwilling to serve and William's power of attorney, on the other hand, did not name an alternate.  Linda's 2012 power of attorney was never revoked.

[3] Attorney Hunter specifically noted that the only residuary clause in the 2013 will is in Article Six, and it is contingent on the establishment of the testamentary trust in the event that William survives Linda.

[¶12]  On June 20, 2023, after the parties had submitted supplemental memoranda setting forth their respective arguments, the Probate Court issued an order on the petition for instructions.  The court rejected the request to reform the 2013 will to name Eric and Mark as residuary devisees, stating:

> While the [c]ourt may reform the Will, it must rely on clear and convincing evidence of intention concerning the disposition of the residuary when William predeceased Linda.  The evidence is not clear and convincing.  The [c]ourt cannot engage in speculation as to Linda [Giguere's] intentions concerning a pre-deceased beneficiary.

The court concluded that "there is no ambiguity" in the 2013 will, that "[t]here is simply no beneficiary at all for the residuary in the event that [William] predeceased [Linda]," and that "[t]he lack of a successor is not a scriven[e]r's error."  Accordingly, the court determined that since the 2013 will did not fully dispose of Linda's estate, the residuary estate passed by intestate succession to Hilary.  *See* 18-C M.R.S. § 2-101(1) (2024) ("Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this Code, except as modified by the decedent's will.").

[¶13]  Eric and Mark timely appealed.

## II.  DISCUSSION

[¶14]  Their principal contention on appeal is that the Probate Court's finding that Linda's 2013 will did not provide for the distribution of her

8

residuary estate to them in the event that William predeceased her "was against the great preponderance of the believable evidence." They argue that the absence of a provision disposing of the residuary estate must have been a scrivener's error, otherwise the result—that Hilary inherits via intestacy—is "illogical" because it conflicts with Linda's clear intent expressed in Article Seven that Hilary be left "nothing" in the will. They maintain that Articles Six and Seven, when read together, provide "powerful circumstantial evidence" of Linda's intention that supports their request for reforming the will.

## A.    Standard of Review

[¶15]   In reviewing an order of the Probate Court, "we defer to the Probate Court on factual findings unless they are clearly erroneous, but we review *de novo* the application of the law to the facts." *Estate of Greenblatt,* 2014 ME 32, ¶ 12, 86 A.3d 1215 (quotation marks omitted). As applied here, under the clear error standard, the party who had the burden of proof in the proceeding below can prevail on "a sufficiency of the evidence challenge to a finding that his or her burden has not been met only by demonstrating that a contrary finding is compelled by the evidence in the record." *Dickens v. Boddy*, 2015 ME 81 ¶ 12, 119 A.3d 722; *see also St. Louis v. Wilkinson Law Offices, P.C.,* 2012 ME 116, ¶ 16, 55 A.3d 443 ("As with any other appeal, on issues on which

the plaintiff had the burden of proof, the clear error standard of review requires that, to overturn a finding that a plaintiff has failed to prove one or more elements of a claim, the plaintiff must demonstrate that a contrary finding is compelled by the evidence."); *Handrahan v. Malenko,* 2011 ME 15, ¶ 13, 12 A.3d 79 ("For an appellant who had the burden of proof at trial to prevail on a sufficiency of the evidence challenge on appeal, that party must demonstrate that a contrary finding was compelled by the evidence.").

## B.      Reformation of the Will

[¶16]  A court may reform a will  "to conform the terms to the [testator's] intention *if it is proved by clear and convincing evidence* what the [testator's] intention was and that the terms of the [will] were affected by a mistake of fact or law, whether in expression or inducement."  18-C M.R.S. § 2-805 (2024) (emphasis added); *see also* 18-C M.R.S. § 3-407 (2024) ("Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation."); *Zani v. Zani*, 2023 ME 42, ¶ 12, 299 A.3d 9.  The purpose of reformation is to give effect to a testator's clear intent, not to rewrite a will for the testator in the guise of interpreting it.  Eric and Mark, as the parties petitioning to reform the 2013 will, had the burden of proving by clear and convincing evidence that Linda intended that they be the

residuary devisees of her estate if William predeceased Linda.  The Probate Court concluded they had not so proven, and the record does not compel a contrary result.

[¶17]  The court correctly determined that the 2013 will does not provide for the disposition of Linda's residuary estate in the event that she outlived William.  The plain language of the will makes that evident.  As the court put it, "[i]n this case there is no ambiguity. . . . There is simply no beneficiary at all for the residuary in the event that [William] predeceased her."  Moreover, Article Six's provision that Eric and Mark receive "[w]hatever balance is then remaining" refers only to remaining assets in the trust established in that article if William survived Linda.  Since William died before Linda, the trust described in Article Six never came into existence.

[¶18]  The court found—and the record does not compel a finding to the contrary—that when executing the 2013 will, Linda did not intend for Eric and Mark to be residuary devisees in the event that she survived their father.  The unrebutted deposition testimony of Attorney Hunter established that Linda was aware that the 2013 will did not provide for the disposition of her

residuary estate if William predeceased her. Linda acknowledged that she "wasn't ready to make [that] decision" and preferred to "deal with that later."

[¶19]  Further, not only did Eric and Mark fail to meet their burden of proving by clear and convincing evidence the very premise of their reformation request—that the omission of a residuary clause in the 2013 will was a scrivener's error—but the record squarely contradicts that assertion. Attorney Hunter, the individual who prepared the 2013 will, testified unequivocally that the omission was not a scrivener's error. It was purposeful because Linda was not prepared at that time to name a devisee. This is further supported by the fact that Linda's 2012 will *did* name a residuary devisee in the event that Linda survived William, indicating that she was likely aware of the need for, and function of, such a provision.

[¶20]  Eric and Mark challenge Attorney Hunter's credibility and posit that her testimony was self-serving. The court, however, expressly found that Attorney Hunter was an "experience[d] counsel" in this area. More importantly, there is no compelling evidence in the record to support the claim that Attorney Hunter had testified untruthfully.

12

## C. Distribution by Intestacy

[¶21]  Because the 2013 will was silent about the disposition of Linda's residuary estate in the event she survived William, the court correctly determined that those assets passed by way of intestate succession to her only child, Hilary.  *See* 18-C M.R.S. § 2-101(1) [4] ("Any part of a decedent's estate not effectively disposed of by will passes by intestate succession to the decedent's heirs as prescribed in this Code, except as modified by the decedent's will."); 18-C M.R.S. § 2-103 (2024) ("[T]he entire intestate estate if there is no surviving spouse[] passes . . . [t]o the decedent's descendants per capita at each generation.").

[¶22]  Eric and Mark contend that the court's application of 18-C M.R.S. § 2-101(1) "violates Maine's presumption against intestacy" because a will must be construed "to avoid intestacy if at all possible."  *Estate of Thompson*, 414 A.2d 881, 887-88 (Me. 1980).  Their argument is misplaced.  The "presumption against intestacy" is a "canon[] of construction" that is employed in interpreting an *ambiguous* provision in a will by "presum[ing] a testator has

---

[4] Even though the former Probate Code in Title 18-A of the Maine Revised Statutes was in effect at the time Linda executed the 2013 Will, the provisions of the Maine Uniform Probate Code in Title 18-C apply here because Linda's death occurred after Title 18-C's effective date of September 1, 2019. *See* 18-C M.R.S. § 8-301(2)(A)-(A-1) (2024) (stating that Title 18-C applies to any will or intestate succession of "decedents who die on or after the effective date").

passed her entire estate through her will unless it appears that she intended to do otherwise." *Estate of Wilson*, 2003 ME 92, ¶ 16, 828 A.2d 784; *see also Lothrop v. Woodford's Congregational Parish*, 119 Me. 42, 43, 109 A. 371, 371 (Me. 1920) ("The presumption against intestacy . . . is only one of fact, and is overcome by the plain language of the will [because] the language in [the will] is clear . . . that the testator, either purposely or *by omission*, has failed to dispose of all his property [thereunder]." (emphasis added)).

[¶23] Here, as the court correctly concluded, "there is no ambiguity." The 2013 will does not have a provision disposing of the residuary estate in the event Linda survived William. As the record makes clear, Linda was aware of this and "wasn't ready" to address this eventuality at the time the will was executed.[5]

[¶24] For these reasons, we affirm the Probate Court's judgment.

---

5 The Probate Court considered 18-C M.R.S. § 2-101(2) (2024) in evaluating whether Eric and Mark had met their burden of proof to reform the 2013 will and concluded that the 2013 will's "exclusion of Hilary Barlow and 'all other possible recipients of my bounty' does not 'expressly exclude or limit' Hilary's right 'to succeed to property of the decedent *passing by intestate succession.*'" Section 2-101(2) provides:

> A decedent by will may expressly exclude or limit the right of an individual or class to succeed to property of the decedent passing by intestate succession. If that individual or member of that class survives the decedent, the share of the decedent's intestate estate to which that individual or class would have succeeded passes as if that individual or each member of that class had disclaimed the individual's or member's intestate share.

The entry is:

Judgment affirmed.

---

Adam J. Shub, Esq. (orally), and Jonathan Mermin, Esq., Preti, Flaherty, Beliveau & Pachios, LLP, Portland, for appellants Mark Giguere and Eric Giguere

Erica M. Johanson, Esq., and Anna Polko Clark, Esq. (orally), Jensen Baird, Portland, for appellee Hilary Barlow

Cumberland County Probate Court docket number 2021-1504
FOR CLERK REFERENCE ONLY

---

Section 2-101(2) "is a new concept in Maine law in its recognition of a negative will." 18-C M.R.S.A. § 2-101 Unif. Probate Code Me. cmt. (2019) (quotation marks omitted). There was no counterpart to this provision in the former Probate Code, Title 18-A. L.D. 123, Cmt. to 18-C M.R.S. § 2-101, § A-2, at 95 (128th Legis. 2017). We have not yet had occasion to address section 2-101(2) and decline to do so here because Eric and Mark did not brief or develop an argument concerning the applicability of this statute and thus have not preserved the issue. *See Holland v. Sebunya,* 2000 ME 160, ¶ 9 n.6, 759 A.2d 205 ("The failure to mention an issue in the brief or at argument is construed as either an abandonment or a failure to preserve that issue."); *see also* Alexander, *Maine Appellate Practice,* § 404 (6th ed. 2022). They only addressed section 2-101(2) briefly during rebuttal at oral argument; this was insufficient to preserve the issue for our review. *Cf. Bayview Loan Servicing, LLC v. Bartlett,* 2014 ME 37, ¶ 24, 87 A.3d 741 ("Because [appellant] raised [the] issue for the first time in its reply brief, [appellant] has failed to preserve [its] argument.").