MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2025 ME 24
Docket:      Pen-23-473
Argued:      December 12, 2024
Decided:     March 4, 2025

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

## ESTATE OF BRIAN E. PRIEST

DOUGLAS, J.

[¶1]  In 2002 and 2009 the town of Pembroke recorded tax liens against property held in joint tenancy by Brian E. Priest and his wife, Lisa C. Priest, and thereby acquired tax lien mortgages on the property.  36 M.R.S. § 943 (2024). On each occasion, the Priests paid the delinquent taxes, and the town discharged the liens through the issuance of a "municipal quitclaim deed."  After Brian[1] died intestate nearly a decade later, a dispute arose among his heirs as to whether the tax liens had resulted in a severance of Brian and Lisa's joint tenancy in the property, thereby terminating Lisa's right of survivorship upon Brian's death.

[¶2]  Lisa now appeals from a judgment entered by the Penobscot County Probate Court (*Brandmeir, J.*) implicitly rejecting her argument that the

---

[1]  First names are used for Brian and Lisa Priest because the parties share the same surname.

2

property remained in joint tenancy and denying her petition to reform the municipal quitclaim deeds to so provide.[2] We vacate the judgment, concluding that Lisa's joint tenancy in the property was not severed because the town never foreclosed on either tax lien mortgage, and its quitclaim deeds served merely to discharge the liens under 36 M.R.S. § 943.

## I. BACKGROUND

[¶3]  Brian and Lisa owned "as joint tenants and not as tenants in common" property in Pembroke.  In 2002, they were delinquent in paying their municipal property taxes.  As a result, the town of Pembroke filed a tax lien against the property.  The tax lien certificate is dated September 23, 2002, and was recorded in the Washington County Registry of Deeds on the same date.

[¶4]  Brian and Lisa paid the overdue 2002 taxes in full on March 22, 2004—seventeen months and twenty-nine days after the date on which the tax lien certificate was recorded.  The town subsequently executed an instrument entitled "Municipal Quit Claim Deed," confirming this payment and releasing its lien:

> The inhabitants of the Municipality of Pembroke, a body corporate and politic, located at Washington County, Maine, for consideration

---

[2]  The judgment appealed from did not address Lisa's alternative request for relief in the form of a declaration that the property is not an asset of the estate.

> paid, release to ***Brian and Lisa Priest*** of ***Pembroke, Maine*** the land in ***Pembroke Maine***:
>
> [Metes and bounds description of the property]
>
> Meaning and intending to convey the Town's interest in the above described property by virtue of a tax lien dated September 23, 2002, and recorded in the Washington County Registry of Deeds in **Book 2665 Page 12** for taxes legally committed to the Town of Pembroke on September 25, 2001. Which taxes together with costs of liens have been paid in full on March 22, 2004.

(Emphasis in original). The instrument is dated June 30, 2005, and was recorded in the Washington County Registry of Deeds on July 18, 2005. No other discharge of the tax lien appears of record.

[¶5] The Priests fell behind on their taxes again in 2009, causing the town to file another tax lien against the property. The tax lien certificate is dated October 2, 2009, and was recorded in the Washington County Registry of Deeds on the same date. The Priests paid the delinquent 2009 taxes in full on November 13, 2010—thirteen months and eleven days after the date that the tax lien certificate was recorded. The town again executed a "Municipal Quit Claim Deed" confirming the payment and releasing the lien:

> The inhabitants of the Municipality of Pembroke, a body corporate and politic, located at Washington County, Maine, for consideration

4

paid, release to ***Brian E. and Lisa C. Priest*** of ***Pembroke, Maine*** the land in ***Pembroke, Maine****:*

[Metes and bounds description of the property]

Meaning and intending to convey the Town's interest in the above described property by virtue of a tax lien dated October 2, 2009 and recorded in the Washington County Registry of Deeds in **Book 3575 Page 307** for taxes legally committed to the Town of Pembroke on October 15, 2008. Which taxes together with costs of liens have been paid in full on November 13, 2010.

(Emphasis in original). The instrument is dated December 30, 2011, and was recorded in the Washington County Registry of Deeds on January 9, 2012. No other discharge of this tax lien appears of record.

[¶6] Brian died intestate on October 10, 2021, survived by his wife, Lisa, and his two children, Lisa M. Leighton[3] and Ryan L. Priest. On January 24, 2022, Leighton petitioned the Washington County Probate Court[4] for formal adjudication of intestacy and appointment of a personal representative. Lisa filed a competing petition for formal adjudication of intestacy and appointment of a personal representative. Lisa also filed a petition for deed reformation

---

[3] Because Lisa Priest and Lisa Leighton share a common first name, Lisa Leighton will be referred to by her surname, Leighton.

[4] In September 2022, Judge Holmes of the Washington County Probate Court recused himself, and the matter was transferred to the Penobscot County Probate Court.

pursuant to 18-C M.R.S §§ 2-805, 3-105 (2024) and sought a judgment declaring that the property is not an asset of Brian's estate.

[¶7] A consolidated hearing was held on August 1, 2023. On October 10, 2023, the Probate Court denied Lisa's petition for deed reformation. The court's reasoning, set out in full, was as follows:

> The Court may reform terms of a governing instrument pursuant to 18-C M.R.S. § 2-805. But in order to do so, the Court must have evidence of the transferor's intention. Here the transferor is a local government taxing authority. There was no evidence on the record showing the intention of the transferor at the time the deed was drafted. Therefore, the Petition to Reform Deed is dismissed.

The order contained no discussion as to the effect of the municipal quitclaim deeds on the Priest's joint tenancy.

[¶8] Lisa timely appealed from the October 10, 2023, order. M.R. App. P. 2(B)(c)(1). On November 20, 2023, the court issued a formal adjudication of intestacy finding that Brian died intestate and appointing Leighton as the personal representative.

## II. DISCUSSION

[¶9] We review a probate court's factual findings for clear error but conduct a de novo review on the application of the law to the facts. *Est. of Greenblatt*, 2014 ME 32, ¶ 12, 86 A.3d 1215.

6

[¶10]  Municipalities are authorized by statute to enforce the assessment of municipal property taxes by filing tax liens against the real estate owned by delinquent taxpayers.  *See* 36 M.R.S. §§ 941-949 (2024).  A tax lien operates as a mortgage on the property; if the delinquent taxes are not paid within the prescribed redemption period, "the tax lien mortgage shall be deemed to have been foreclosed."  36 M.R.S. § 943.[5]

[¶11]  Section 943, as relevant here, provides as follows:

*The filing of the tax lien certificate in the registry of deeds shall create a tax lien mortgage on said real estate to the municipality* in which the real estate is situated having priority over all other mortgages, liens, attachments and encumbrances of any nature, *and shall give to said municipality all the rights usually incident to a mortgagee*, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired.
. . . .
*In the event that the tax, interest and costs underlying the tax lien are paid within the period of redemption, the municipal treasurer or assignee of record shall prepare and record a discharge of the tax lien mortgage* in the same manner as is now provided for the discharge of real estate mortgages, except that a facsimile signature of the treasurer or treasurer's assignee may be used.

*If the tax lien mortgage*, together with interest and costs, *shall not be paid within 18 months after the date of the filing of the tax lien certificate in the registry of deeds, the said tax lien mortgage shall be deemed to have been foreclosed* and the right of redemption to have expired.

---

[5]  Title 36 M.R.S. § 943 has been amended several times since the town's first tax lien certificate was recorded in 2009; however, the amendments have no impact on this appeal.  *See e.g.*, P.L. 2023, ch. 640, § 2 (effective August 9, 2024) (codified at 36 M.R.S. § 943).

*Id.* (emphasis added).

[¶12] Thus, the filing of a tax lien certificate in the registry of deeds "create[s] a tax lien mortgage" that gives a municipality "all the rights usually incident to a mortgagee, except that the municipality shall not have any right of possession of said real estate until the right of redemption shall have expired." *Id.* A mortgagee holds legal title in the property, subject to the mortgagor's right of redemption. *See KeyBank Nat'l Ass'n v. Keniston*, 2023 ME 38, ¶ 15, 298 A.3d 800 ("[A] mortgage is a conditional conveyance vesting the legal title in the mortgagee, with only the equity of redemption remaining in the mortgagor." (quotation marks and alteration omitted)); *see also Martel v. Bearce*, 311 A.2d 540, 543 (Me. 1973) (stating that only "[t]he passage of eighteen months' time during which the taxes remain unpaid places complete record title in the municipality").

[¶13] Section 943 establishes an 18-month redemption period. 36 M.R.S. § 943. If the "tax, interest and costs underlying the tax lien" are paid within the 18-month redemption period, then a municipality is required to "prepare and record a discharge of the tax lien mortgage in the same manner as is now provided for the discharge of real estate mortgages." *Id.* If the 18-month period expires without payment having been made, the tax lien mortgage is foreclosed.

8

If the liened property is held in joint tenancy, a tax lien mortgage foreclosure severs the joint tenancy. *See Schaefer v. Peoples Heritage Sav. Bank*, 669 A.2d 185, 187 (Me. 1996) ("When the mortgage is discharged, the mortgagor will remain a joint tenant. When the mortgage is foreclosed, the joint tenancy is severed and the mortgagee becomes a tenant in common.").[6]

[¶14] The Priests paid the taxes due within the statutory 18-month redemption period. The 2002 taxes (and associated interest and costs) were paid in full on March 22, 2004, seventeen months and twenty-nine days after the tax lien certificate was filed on September 23, 2002. The 2009 taxes (and associated interest and costs) were paid in full on November 13, 2010, thirteen

---

[6] Prior to 2012, when a municipality foreclosed on property held in joint tenancy, its reconveyance to the taxpayers by quitclaim deed created a tenancy in common unless the deed provided otherwise. *See* 33 M.R.S. § 161 (2010) ("A deed of release or quitclaim of the usual form conveys the estate which the grantor has and can convey by deed of any other form."); *see also* 33 M.R.S. § 159 (2010) (as a general rule, "[c]onveyances not in mortgages or devises of land to 2 or more persons create estates in common, unless otherwise expressed"). Effective January 1, 2012, however, the Legislature amended 33 M.R.S. § 159, which governs the creation of joint tenancies in real estate, to provide:

> A conveyance on or after January 1, 2012 by a taxing or assessing authority of real property acquired from joint tenants by foreclosure or a tax assessment or assessment lien mortgage, if made to such persons, recreates the joint tenancy held by the persons at the time of the foreclosure unless otherwise indicated anywhere in the conveyance by appropriate language.

P.L. 2011, ch. 41, § 1 (effective Sept. 28, 2011) (codified at 33 M.R.S. § 159 (2024)). Even though the conveyances at issue in this matter occurred prior to the amendment's effective date, this provision would have had no applicability here because section 943 did not effect a foreclosure on the property.

months and eleven days after the tax lien certificate was recorded on October 2, 2009.

[¶15] Thus, neither the 2002 tax lien nor the 2009 tax lien ripened into a foreclosure, and Brian and Lisa's joint tenancy continued in effect. Despite their titles, each of the "municipal quitclaim deeds" issued by the town operated only as "a discharge of the tax lien mortgage" that had no effect on the joint tenancy. Lisa's right of survivorship as a joint tenant remained intact. We therefore vacate the judgment and remand the matter to the Probate Court.

The entry is:

> Judgment vacated. Remanded to the Probate Court for further proceedings consistent with this opinion.

Andrew K. Lizotte, Esq. (orally), Dover-Foxcroft, for appellant Lisa C. Priest

Nathan Hodgkins, Esq. (orally), Owens & Hodgkins Law PLLC, Machias, for appellee Lisa M. Leighton

Penobscot County Probate Court docket number 2022-0936
FOR CLERK REFERENCE ONLY